635 So.2d 1357 (1994)
TAYLOR MACHINE WORKS, INC.
v.
GREAT AMERICAN SURPLUS LINES INSURANCE COMPANY and Sedgwick-James of Mississippi, Inc., as Successor in Interest to Crump/Spencer Murphree, Inc.
No. 91-CA-0687.
Supreme Court of Mississippi.
February 10, 1994.
Rehearing Denied May 19, 1994.
*1358 Thomas Y. Page, Wes W. Peters, Upshaw Williams Biggers Page & Kruger, Jackson, for appellant.
Aubrey E. Nichols, Gholson Hicks Nichols & Ward, Columbus, Richard T. Lawrence, Watkins & Eager, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
SULLIVAN, Justice, for the Court:
Taylor Machine Works, Inc., a Mississippi corporation, filed suit against Great American Surplus Lines Insurance Company and Sedgwick-James of Mississippi, Inc., on October 8, 1990. Taylor, which manufactured a fork-lift which caused the death of Vito Dacquisto, sought to pay for its liability through a 1986 insurance policy between Taylor and Great American. Sedgwick-James is a party by way of its procurement of a similar policy for 1987 on behalf of Taylor.
The trial judge granted Great American's and Sedgwick-James' motions for summary judgment, finding as a matter of law that no claim was made under the insurance policy, and denying Taylor's motion to amend its complaint and motion to compel discovery.
Taylor appeals, assigning the following four issues:
I. Whether the trial court erred in ruling that the December 8, 1986 letter as a matter of law did not constitute a claim as defined by the insurance policy;
II. Whether Sedgwick-James' motion for summary judgment was timely filed and ripe for consideration;
III. Whether the trial court erred in denying Taylor's motion to amend its complaint to include a count for punitive damages based on alleged delay tactics on the part of Great American; and
IV. Whether the trial court erred in denying Taylor's motion to compel and motion for sanctions.

FACTS
Taylor Machine Works, Inc., (Taylor), is a Mississippi Corporation which manufactures *1359 forklifts used throughout the United States. Taylor, recognizing the potential for products liability lawsuits against it, obtained liability insurance and also surplus insurance, to cover extra costs of claims not paid by the original insurance. The instant lawsuit, filed in the Circuit Court of Winston County, Mississippi, involves one plaintiff, Taylor Machine Works, Inc., and two defendants, Great American and Sedgwick-James. Taylor had a 1986 claim policy (# 6-CL-5-73-76) and a 1987 claim policy (# 7-CL-7-84-76) with Great American. This 1987 policy specifically excluded the Dacquisto claim from coverage, according to Taylor's appeal brief. The 1987 policy is not in the record, but the 1986 policy is.
The instant case stems from the accidental death of Vito Dacquisto, an employee of International Transportation Services, Inc. (ITS), in California. On September 28, 1986 a side-handler forklift, which had been manufactured by Taylor, backed over Dacquisto in the ITS workplace. As early as October 7, 1986, about a week after the accident, a letter indicates that Taylor had been aware of the Dacquisto accident and had begun an investigation. Dacquisto's employer, ITS, wrote a letter on December 8, 1986, to Taylor; since this letter is at the heart of this appeal, its contents are repeated below in full:
 December 8, 1986
 Mr. William Clark
 Taylor Machine Works, Inc.
 P.O. Box Hwy 15N
 Louisville, MS 39339
 Dear Mr. Clark:
This is to inform you of an accident which occurred September 28, 1986 involving a Taylor sidehandler (S/N S-HO-17842) which backed over a pedestrian worker, Mr. Vito Dacquisto, killing him.
While our investigation of this incident is continuing, we wish to inform yu [sic] that Taylor Machine Works, Inc. may well be held responsible for this incident and liable for damages.
 Very truly yours,
INTERNATIONAL TRANSPORTATION SERVICE, INC.
 [Paulsen's signature.]
 Louis W. Paulsen
 Safety & Loss Control Supervisor
 LWP/dlm
According to the insurance policy, in order for Taylor to collect from Great American, the injured party must make a claim within the policy year to Taylor. The policy defined claim as "a notice received by the insured of an intention to hold the insured responsible for an occurrence involving the insurance provided under this policy, and shall include the service of suit or institution of arbitration proceedings against the insured." Taylor is the insured here.
In the spring of 1987, Dacquisto's beneficiaries brought a wrongful death action against Taylor in the California state court system. ITS, as Dacquisto's employer, intervened in that lawsuit to protect its lien obtained through its worker's compensation payments. Neither Dacquisto's beneficiaries nor ITS are parties to the instant case.
Since the limit of the 1987 policy had been exhausted by another claim and settlement, Taylor sought to obtain funds for the Dacquisto accident under its 1986 policy with Great American.
Mark Brak, claims manager for Great American, stated that Great American did not receive any notice of the Dacquisto claim until it received copies of the Dacquisto "suit papers" on November 23, 1987. Great American paid Taylor $500,000 for another claim, the Burns case, which exhausted the funds from the 1987 policy.
Taylor filed suit in October 1990, alleging breach of contract, negligence, and recission. Taylor sent a set of interrogatories and requests for production to Great American and Sedgwick-James and mailed them October 5, 1990. Taylor claims these were due on November *1360 23, 1990. On November 19, 1990, after Taylor agreed to allow the defense attorney until December 1, 1990, to answer the complaint, Taylor's attorney advised Great American's counsel that they needed to get things "rolling," in the case, because of the pending wrongful death suit in California.
On January 25, 1991, Taylor filed a motion for summary judgment. In February 1991, Taylor again told Great American of its desire to not waste time in the litigation.
Great American responded by mail to Taylor's request for documents on February 28, 1991; these responses were filed on March 5, 1991. Great American objected to most of the requests. This response occurred about five months after Taylor sent them. Sedgwick-James' response to Taylor's request for documents is dated May 21, 1991, and marked filed, May 28, 1991. This is well over six months after Taylor requested them.
Great American responded to Taylor's interrogatories on March 14, 1991. This is over five months after Taylor sent them. Great American objected to most of the questions.
The Scheduling Order by Judge Sumner required discovery to be completed by August 15, 1991; all motions for amendments to pleadings by April 15, 1991; all motions, except in limine, by September 15, 1991.
Taylor filed its motion to compel discovery on April 4, 1991. Taylor, also via this motion, sought sanctions for Great American's delay and refusal to respond. This is within the time period of the scheduling order.
On June 6, 1991, Taylor mailed its motion to amend the complaint to the court; in this motion, Taylor sought to add a count for punitive damages, citing delay and denying a claim without an arguable reason to do so. The motion to amend was filed on June 18. June 17 was the date on which the judge granted summary judgment and denied Taylor's oral motions to amend the complaint and compel discovery.
Taylor requested the entire files claim on the Burns case, which is the claim which exhausted all of the 1987 policy funds. Great American objected on the basis of immateriality to the issues in the instant case. Taylor requested the entire file on the Dacquisto claim. Great American objected on the basis of immateriality, overbreadth, and burdensomeness. Taylor requested a complete file of the "underwriting file applicable to" the 1986 policy, as well as the same for the 1987 policy. Great American objected on the basis of immateriality, overbreadth, and burdensomeness.
In its interrogatories, Taylor requested similar information, such as the names of persons involved in the adjustment of the claims under the 1986 and 1987 policies. Great American objected on the basis of vagueness. Great American objected, stating that the question was not a factual question.
Taylor requested from Sedgwick-James all files relating to Taylor. Sedgwick-James objected, claiming overbreadth, but stating that it would provide those files related to the subject litigation. Taylor propounded a few interrogatories to Sedgwick-James, to which Sedgwick-James responded and objected in a few respects.

LAW

I.

THE TRIAL COURT ERRED IN RULING THAT THE DECEMBER 8, 1986, LETTER AS A MATTER OF LAW DID NOT CONSTITUTE A CLAIM AS DEFINED BY THE INSURANCE POLICY.
The standard of review of summary judgment is de novo. This Court employs the same standard for granting or denying a summary judgment as the trial judge does. Mantachie Natural Gas District v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss. 1992). Where there is doubt as to whether a fact issue exists, the non-moving party gets the benefit of this doubt, and all other doubts. Id., citing, Mink v. Andrew Jackson Life Ins. Co., 537 So.2d 431, 433 *1361 (Miss. 1988). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56, M.R.C.P. In reviewing the motion, the court considers "all admissions, answers to interrogatories, depositions, affidavits, and any other evidence, viewing the evidence in a light most favorable to the non-movant." Skelton v. Twin County Rural Elec. Ass'n., 611 So.2d 931, 935 (Miss. 1992); Owen v. Pringle, 621 So.2d 668, 670 (Miss. 1993).
The question of whether the December 8 letter was a claim or not, following the definition under the contract, was subject to the context in which the letter was written, the intent of the letter writer, the understanding of the parties, etc. Therefore, since this is a vital fact issue, and the parties' evidence is in dispute as to what the letter meant and also as what the policy meant to be a "claim," summary judgment was improper. The trier of fact should determine whether the letter reveals an intention to hold Taylor responsible for the damages.
Great American also argues that it is not liable because the letter could not possibly be a claim because it was not written by the injured party to whom Taylor would be responsible. The letter was written by Dacquisto's employer, ITS. However, what Great American fails to state is that ITS has an interest in seeking out those liable for Dacquisto's death, by way of its workers' compensation lien.
We conclude that the interpretation of the policy's definition, as well as the language of the letter, and the various parties' understandings and actions in investigating the accident, can yield several interpretations, any one of which would dispose of this case. The plaintiff is entitled to a trier of fact to make this decision.
Here, the contract is the insurance policy, which covered the 1986 year, expiring January 1, 1987. In contract cases, the intent of the parties controls. Kight v. Sheppard Building Supply, 537 So.2d 1355 (Miss. 1989). The court gives the contract a fair and just interpretation to establish the intent of the parties. Vinson v. Meridian Masonic Temple Building Ass'n, 475 So.2d 807 (Miss. 1985).
Here, the provision defining "claim" must be interpreted and applied to the meaning of the language of the December 8 letter. This inquiry is factual in nature. It is not a purely legal inquiry. If it were purely a decision of law, we would be bound by an absurd holding that all policies and letters with identical wording mean exactly the same thing in every situation.
Perhaps the contractual purpose of requiring claims to be made during the policy year would be to give Taylor notice of the accident and the potential liability pending investigation, so that an adequate investigation can be done. This would enable it to properly make a decision as to its position on the accident. Though the argument could be made that this implies that the letter is in fact a claim, this again, appears to be a fact-call, therefore, summary judgment would be improper.
The judge erred in granting the summary judgment because his conclusion of law was dependent upon an issue of fact.

II.

WHETHER SEDGWICK-JAMES' MOTION FOR SUMMARY JUDGMENT WAS TIMELY FILED AND RIPE FOR CONSIDERATION.
Taylor alleged that assuming that the 1986 policy did not cover the Dacquisto loss, then Sedgwick-James should be liable to Taylor for the loss. The reason given is that the 1987 policy, procured by Sedgwick-James, specifically excluded the Dacquisto loss from coverage. Taylor alleges that Sedgwick-James was thus negligent in procuring an insurance policy in its role as insurance agent; that is, it was negligent to explicitly remove the Dacquisto loss from coverage under the 1987 policy, when it could not be covered by the 1986 policy.
*1362 Sedgwick-James' appellee's brief and response to Taylor's summary judgment motion defends itself only upon the ground that an agent is not responsible for the insurance which the provider is liable for. That is, an alleged breach of an insurance contract may be brought against the insurance company, not the agent, because the insurance company is responsible for performance of the contract. Taylor's reply brief accurately responds that Taylor does not seek liability monies from Sedgwick-James based on the 1986 policy. Rather, Taylor seeks supposed damages from Sedgwick-James because of procuring a policy which specifically excluded the Dacquisto claim while the 1986 policy's claim requirement had not been met. This claim is an alternate argument; it assumes that Taylor is unsuccessful in arguing that a claim was in fact made in 1986.
An insurance agent owes a duty to his principal to procure insurance policies with reasonable diligence and good faith. The duty owed is to provide the level of skill in procuring insurance reasonably expected of one in that profession. First United Bank of Poplarville v. Reid, 612 So.2d 1131, 1137 (Miss. 1992); Ritchie v. Smith, 311 So.2d 642, 646 (Miss. 1975).
Since the lower court determined that the December 8, 1986, letter did not constitute a claim as a matter of law, and Sedgwick-James' motion for summary judgment and response to Taylor's motion addressed only the "claim or no claim" issue, it was improper for the judge to grant summary judgment on the negligent procurement issue.
Therefore, we reverse and remand this part of Taylor's complaint for further proceedings.

III.

WHETHER THE TRIAL COURT ERRED IN DENYING TAYLOR'S MOTION TO AMEND ITS COMPLAINT TO INCLUDE A COUNT FOR PUNITIVE DAMAGES BASED ON ALLEGED DELAY TACTICS ON THE PART OF GREAT AMERICAN.
The trial court's denial of a motion to amend a complaint is subject to an abuse of discretion standard of review. Broadhead v. Terpening, 611 So.2d 949, 953 (Miss. 1992).
It is true, that according to the scheduling order, that Taylor did not timely file its motion to amend. All motions to amend pleadings were due by April 15, 1991. Taylor mailed its motion to amend on June 6, 1991; it was filed by the circuit clerk on June 18, 1991, the day after the judge granted summary judgment.
The motion to amend the complaint asked for an amendment to include a count for punitive damages. The alleged basis for this request was a change by Great American from initially representing that it covered the Dacquisto loss. On December 23, 1987, Mark Brak of Great American wrote Taylor, stating that Great American would cover the Dacquisto loss. But later, on October 5, 1988, Brak informed Taylor that Great American would not cover the Dacquisto loss because it fell in the 1987 policy, and that the 1987 policy had been paid to its limits on another claim. Taylor further alleges that Great American should have conducted a reasonable investigation into the facts and claim dates; had Great American done so, it would have had no arguable reason to refuse to provide coverage for the Dacquisto claim under the 1986 policy. Taylor's proposed Amended Complaint further states that Great American acted maliciously in attempting to cover up information, for falsely denying the existence of certain terms of the policy, and for delaying payment to the wrongful death claimants.
The transcript of the summary judgment motion hearing, at which Taylor brought up its motion to amend and motion to compel, indicates that the judge denied these motions without consideration, because he had already granted summary judgment against Taylor.
Great American argues that this denial should be affirmed because Taylor's motion to amend was untimely. However, many of the allegations which are the basis for Taylor's new request for punitives occurred after this lawsuit was filed and during the course of the litigation and discovery.
*1363 For all of these reasons, taken together, it appears that the trial judge hurriedly denied the motion to amend. Therefore, these motions should be remanded for further consideration.

IV.

WHETHER THE TRIAL COURT ERRED IN DENYING TAYLOR'S MOTION TO COMPEL AND FOR SANCTIONS.
The trial court's granting or denial of a motion to compel is subject to an abuse of discretion standard of review on appeal. See Swan v. I.P., Inc., 613 So.2d 846, 859 (Miss. 1993) (Sullivan, J., for the Court as to Part II.).
Was Taylor's motion to compel and motion for sanctions timely filed? Yes, according to the scheduling order. All motions other than those for amendments to pleadings, excepting motions in limine, were to be filed by April 15, 1991. Taylor's motion to compel discovery/for sanctions was filed on April 4, 1991. Also, the scheduling order required that discovery be completed by August 15, 1991.
The question of whether the requested information was irrelevant need not be decided by this Court at this time. The reason is that, apparently, the trial judge did not make a substantive ruling in denying these motions. Apparently, he just ruled on them as an immediate consequence of his previous granting of summary judgment.
Also, as Taylor states in its motion to compel and for sanctions, since Great American did not object to the discovery requests within the allotted time, the objections are waived. Rule 33, M.R.C.P., states that they must be answered or objected to within 45 days if sent with the complaint. Great American failed to do so. Perhaps this is cause to reverse and render an order for production, however, we reverse and remand for consideration of these motions for production and sanctions together.

CONCLUSION
The trial court's grant of Great American and Sedgwick-James' summary judgment is reversed and remanded. The trial court's denial of Taylor's motion to amend and motion to compel and for sanctions is reversed and remanded to be considered by the trial court.
REVERSED AND REMANDED TO THE CIRCUIT COURT OF WINSTON COUNTY, MISSISSIPPI.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.