# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2017

Lyle W. Cayce
Clerk

No. 16-60471

EMERALD COAST FINEST PRODUCE COMPANY, INCORPORATED,

>  Plaintiff - Appellant

v.

ALTERRA AMERICAN INSURANCE COMPANY; BANCORPSOUTH
INSURANCE SERVICES, INCORPORATED, formerly known as Stewart
Sneed Hewes Insurance,

>  Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The plaintiff leased its commercial warehouse and required the lessee to provide full property damage insurance coverage for the warehouse. After the warehouse sustained substantial fire damage, the plaintiff brought this suit against the lessee, the insurance agent, and the insurer. The plaintiff settled with the lessee, and the district court granted summary judgment to the insurance defendants. The plaintiff appealed. We AFFIRM.

No. 16-60471

## FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 2013, Emerald Coast Finest Produce Company, Inc. entered a lease agreement with Sunrise Fresh Produce, LLC. Under the agreement, Sunrise would operate its produce distribution business in Emerald's specialty refrigerated warehouse located in Pensacola, Florida. The lease agreement also gave Sunrise an option to purchase the warehouse for a price "equal to fair market value, but with a cap of $4,600,000.00."

The lease agreement required Sunrise to "provide and keep in force fire and extended coverage property damage insurance on the Premises equal to 100% of the replacement value of the building." In the weeks leading up to the execution of the lease agreement, Sunrise's Vice President and Chief Financial Officer, Jarrod Gray, initiated the process of obtaining the required insurance by contacting Sunrise's insurance agent at BancorpSouth, Jeff Carter. Carter was Vice President and Producer at BancorpSouth.

Gray emailed Carter on January 4, 2013, and informed him that Sunrise would be responsible for "insuring the building, contents, etc." of a property in the coming weeks. Gray stated "[t]he building has a value of roughly $5,000,000." He asked Carter to "begin the process of determining insurance cost." Gray also stated he would "get [Carter] the other information (i.e. contents value, inventory, trucks, etc.) early next week."

On January 14, Carter asked Gray for information about the building, including the square footage, distance from the beach, and year the building was built. Another Sunrise employee, Michael O'Brien, provided that information. In an email to Gray and O'Brien later that day, Carter stated, "We can always adjust later but using $5,000,000 on main building (125,000 SF). How much on 8,000 shop? ($300,000?) How much in Contents / Stock for Main Building? Contents for Shop?" O'Brien responded, "Sounds good on buildings," and Gray responded, "$300,000 is fine on shop. Contents in main

2

No. 16-60471

building would be roughly $350,000 including inventory. Contents of [shop] would be roughly $25,000."

BancorpSouth added the warehouse insurance policy to Sunrise's existing property damage insurance policy with Alterra America Insurance Co.[1] The policy limits were as described in the emails, including a $5,000,000 limit on the warehouse. An endorsement added Emerald to the policy as "mortgagee." After the policy was issued, Emerald received a certificate of insurance that listed Sunrise as the insured, Emerald as an additional interest, and described the policy limits. Emerald disputes whether it ever received a copy of the insurance policy, but it does not dispute that it received a copy of the certificate of insurance. There is no indication that any party ever expressed concern about the amount of coverage placed on the warehouse.

On April 26, 2013, three months after the parties entered into the lease agreement, a fire broke out in the warehouse and substantially damaged the building. Emerald believed the fire was caused by Sunrise's improper installation of two 48-volt forklift chargers in the warehouse. After the fire, Alterra hired a company that determined the replacement cost of the warehouse was $15,258,019, far exceeding the $5,000,000 in coverage. Another report concluded that repairs would cost $10,037,411. Emerald received the extent of the $5,000,000 policy limit. Emerald claims the defendants should have placed $15,000,000 in coverage, though, and calculates its damages as the difference between the $5,000,000 policy and the $15,258,019 replacement-cost figure.

Emerald filed the current complaint against Sunrise, BancorpSouth, and Alterra on October 15, 2014, in the United States District Court for the

---

[1] Alterra states that it was erroneously named in the complaint as "Alterra *American* Insurance Company."

No. 16-60471

Southern District of Mississippi. Emerald argued Sunrise breached its obligations under the lease agreement and was negligent in various respects. Emerald and Sunrise have settled that part of the suit.

Emerald claimed BancorpSouth was negligent for failing to determine the actual replacement-cost value of the warehouse before placing insurance coverage with Alterra. Emerald asserted another negligence claim against BancorpSouth for alleged failure to procure the requested 100-percent replacement-cost insurance coverage. Finally, Emerald asserted a negligence claim against Alterra for failing to determine the actual replacement cost of the warehouse and, in the alternative, for respondeat superior liability for the negligence of BancorpSouth.

BancorpSouth filed a motion for summary judgment on April 24, 2015. Alterra did the same a month later. Emerald responded with, among other motions, a motion for partial summary judgment in which Emerald argued that the district court should apply Florida law to its claims. The district court denied that motion without prejudice due to insufficient briefing. It noted that Emerald's motion contained two pages of argument and failed to assert that there was a true conflict between Florida and Mississippi law for each claim.

Emerald also provided substantive responses under Mississippi law to the summary-judgment motions. Emerald argued that it was a third-party beneficiary to the insurance contract. The district court determined it was presented with a "discrete question": whether Emerald, asserting status as a third-party beneficiary of the insurance policy between Sunrise and the defendants, could assert its claim for negligent procurement against the defendants. Applying Mississippi law, the district court concluded that Emerald could not bring such a claim. Any duty Emerald may have been owed under the policy "could not have existed prior to the policy's execution."

4

No. 16-60471

After the district court granted summary judgment to the defendants, Emerald filed motions for reconsideration, which the district court treated as motions under Federal Rule of Civil Procedure 59(e).  There, Emerald provided a fuller discussion of Florida law and argued that was the law that should apply to its claims.  The district court decided it would address Emerald's conflict-of-laws argument "even though it was within the Court's discretion to simply deny the motion altogether."  The district court concluded that Emerald had not demonstrated a relevant conflict of laws because its claims failed under both states' laws.  Emerald's Florida-law argument had relied primarily on a Florida statute dealing with enforcement of insurance policies, and the district court concluded that statute was "irrelevant."  The court noted once again that Emerald argued status as a third-party beneficiary to the insurance policy, and the claim failed because Emerald did not allege status as a third-party beneficiary to any contract to procure insurance.

The district court entered final judgment on July 6, 2016, after Emerald settled its remaining claims with Sunrise.  Emerald appealed.

DISCUSSION

We review a grant of summary judgment *de novo*.  *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).  We generally review denial of a Rule 59(e) motion for abuse of discretion.  *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 732 (5th Cir. 2015).  "Issues that are purely questions of law are, however, reviewed *de novo*."  *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 405 (5th Cir. 2002).

Emerald seeks to hold the defendants liable in negligence for failing to procure the proper amount of insurance on the warehouse.  Specifically, Emerald argues the defendants negligently "fail[ed] to determine the actual

replacement cost value" of the warehouse and negligently "fail[ed] to procure 100% replacement cost value coverage."

Initially, Emerald argues that Florida law applies to its claims, not Mississippi law. It acknowledges the lease agreement stated Mississippi law applied to its obligations and provided exclusive venue and jurisdiction would be in a court of competent jurisdiction in Forrest County, Mississippi. Yet, because the insurer and the agent were not parties to that agreement, Emerald argues the duties it was owed by those defendants are not controlled by the lease. Emerald also seeks to preserve its argument under Mississippi law by arguing that, in the event Mississippi law applies, its claims also succeed under that framework. Regardless, as we will discuss, Emerald's claims fail under the laws of either Florida or Mississippi. There was, therefore, no reason for the district court to reconsider its grant of summary judgment to the defendants when it chose to address Emerald's conflict-of-laws argument. *See Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006).

We start with the fact that Mississippi law recognizes claims for negligent procurement of insurance. *See Mladineo v. Schmidt*, 52 So. 3d 1154, 1162–64 (Miss. 2010). "An insurance agent must use that degree of diligence and care with reference thereto which a reasonably prudent person would exercise in the transaction of his own business." *Id.* at 1162 (brackets omitted).

Whether Emerald, who was not the insured, can maintain its claims against the defendants depends on whether the defendants owed it a duty in procuring the insurance. The Mississippi cases discussing an insurance agent's negligence in procuring insurance have done so in light of a duty owed to the insured. *See Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.*, 635 So. 2d 1357, 1362 (Miss. 1994). Sunrise was the insured under the policy. Emerald was added to the policy as a mortgagee by an endorsement that became effective the same day Sunrise and Emerald entered into the lease

agreement.  Emerald concedes that no Mississippi case recognizes a duty owed by an agent to a party in Emerald's position when the agent procures insurance for its insured.  Emerald nevertheless argues it was owed such a duty.

Emerald first asserts it was a third-party beneficiary to the contract of insurance.  In Mississippi, "a third party may maintain an action as a third-party beneficiary to enforce a promise made for their benefit," but that right "must 'spring' from the terms of the contract."  *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1145 (Miss. 2004).  Accordingly, because at best the policy is the source of any promise to Emerald as a third-party beneficiary, nothing in that policy such as the amount of coverage could be a breach of an already existing obligation.

Emerald also argues it was owed a more "general" duty judged by a standard of negligence.  That argument fares no better.  Emerald downplays the importance of the contractual relationship between the parties, but that relationship is central to the claim.  The lease agreement between Emerald and Sunrise placed responsibility on Sunrise to provide and maintain property damage insurance coverage "equal to 100% of the replacement value of the building."  Sunrise set out to fulfill its obligation when it contacted its insurance agent, BancorpSouth, and requested insurance for the warehouse.  BancorpSouth placed the requested insurance by adding the coverage to an existing policy BancorpSouth already had in place for Sunrise.  Emerald was not involved in the procurement of the policy, as it relied on Sunrise to provide and maintain the insurance.  Emerald was added to the policy as mortgagee via an endorsement after the policy limits were established.

As already noted, Mississippi cases provide this: "An insurance agent owes a duty to his principal to procure insurance policies with reasonable diligence and good faith."  *See Taylor*, 635 So. 2d at 1362.  The cases recognizing a claim for negligent failure to procure do so in the context of allegations that

"the agent either failed altogether to procure coverage or the policy procured by the agent did not provide the coverage requested by the insured." *See Curry v. State Farm Mut. Auto. Ins. Co.*, 599 F. Supp. 2d 734, 738–39 (S.D. Miss. 2009) (collecting cases). Even in the context of the insured's relationship with the agent, the agent's duty is limited. The agent, for example, is under no "affirmative duty to advise buyers regarding their coverage needs," as "insureds are in a better position" to make that assessment. *See Mladineo*, 52 So. 3d at 1163.

Emerald's claims have other shortcomings. It received a certificate of insurance that listed the $5 million coverage limit on the warehouse, yet Emerald never questioned the amount of coverage. "[T]he 'duty-to-read' and 'imputed-knowledge' doctrines are firmly rooted in Mississippi precedent." *Id.* at 1162. Although Emerald claims it never received a copy of the insurance policy itself and therefore the duty-to-read doctrine is inapplicable, there is no dispute that it received the certificate of insurance listing the coverage limits. Emerald is not arguing here about a policy provision. It is arguing the amount of coverage did not reflect the full replacement value of the warehouse.

Because no authority supports the recognition of Emerald's theory of recovery under Mississippi law, and given the "countervailing considerations," we will not "expand the existing scope of Mississippi law" as Emerald invites us to do. *See Barfield v. Madison Cnty.*, 212 F.3d 269, 272–73 (5th Cir. 2000).

Emerald also argues that Florida law supports its claims against the defendants. Emerald's Florida-law argument focuses solely on one case by a Florida intermediate appellate court — a case it did not cite in the district court. *See Daniel v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n*, 718 So. 2d 936 (Fla. Dist. Ct. App. 1998). In *Daniel*, a father obtained mortgage financing for his son and daughter-in-law. *Id.* at 937. The homeowner's insurance policy listed the father as the named insured, but there

was also evidence that the agent was informed the younger couple would be the ones living in the home. *Id.* After a theft and a fire, a claim was made for damage to the structure, damage to and loss of the couple's personal property, and the couple's living expenses. *Id.* The couple initially asserted third-party beneficiary status to the contract, but that theory was rejected by the court. *Id.* They also argued negligence against the agent and insurer for failing to obtain the appropriate insurance. *Id.* The court reversed summary judgment on that claim, determining fact issues remained regarding whether the agent obtained appropriate insurance. *Id.* at 937–38.

Emerald argues *Daniel* supports its ability to bring its negligent-procurement claims against the defendants. The plaintiffs in *Daniel*, however, argued they should have been the ones insured under the contract. Emerald, by contrast, concedes that it is not an insured under the insurance contract at issue here. *Daniel* does not establish the general negligence duty Emerald would have us recognize.

There is some discussion among the parties that Florida intermediate appellate courts have recognized the ability of a third party to bring a negligent-procurement claim where the party alleges status as a third-party beneficiary to the insurance policy and the contract to procure insurance. *See Rihon v. Wilson*, 415 So. 2d 94, 96 (Fla. Dist. Ct. App. 1982); *Hamer v. Kahn*, 404 So. 2d 847, 849–50 (Fla. Dist. Ct. App. 1981). The district court, relying on those cases, held that Emerald had never claimed status as a third-party beneficiary to the contract to procure insurance and rejected Emerald's claims on that basis. Though Emerald recognizes *Rihon* and *Hamer* as "good law," it argues they are beside the point because, as breach-of-contract cases, they do not apply to Emerald's negligence claims. We do not consider this area of Florida law because any argument that the district court applied those cases

No. 16-60471

incorrectly was raised too late, only in Emerald's reply brief. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

Emerald's claims fail under Florida and Mississippi law. Emerald has not demonstrated that the district court erred.

AFFIRMED.