# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-02011-SCT

*JOHN P. MLADINEO AND SHERRY MLADINEO*

*v.*

*RICHARD EARL SCHMIDT, MICHAEL*
*FELSHER INSURANCE AGENCY AND*
*NATIONWIDE PROPERTY & CASUALTY*
*INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2008 |
| TRIAL JUDGE: | HON. BILLY G. BRIDGES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CHARLES R. WILBANKS, JR. |
| | MATTHEW R. DOWD |
| | FRANK T. MOORE, JR. |
| ATTORNEYS FOR APPELLEES: | H. MITCHELL COWAN |
| | LAURA L. HILL |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART AND REMANDED - 10/28/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     John and Sherry Mladineo sued Richard Schmidt, Michael Felsher d/b/a the Felsher Insurance Agency, and Nationwide Property & Casualty Company (collectively referred to as "the defendants") on multiple counts arising out of noncovered claims made on the Mladineos' homeowner's insurance policy after Hurricane Katrina.   The trial court granted summary judgment to the defendants as to all issues.  The Mladineos appeal the trial court's

grant of summary judgment. After review, this Court reverses the ruling of the trial court in part, affirms in part, and remands the matter to the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2.     The Mladineos purchased a home in Ocean Springs, Mississippi. Prior to closing on the property, John Mladineo discussed obtaining insurance coverage for the home and other structures on the property with Richard Schmidt, a Nationwide insurance salesman employed with the Felsher agency. The Mladineos alleged in their complaint that during those discussions, John Mladineo had requested "full protection" for the dwelling and other structures from all weather conditions. The Mladineos further alleged that Schmidt had responded that John would need to purchase a "hurricane policy" in order to obtain the requested coverage.

¶3.     The Mladineos averred that John had inquired as to whether such a policy would cover all wind and water damage and was assured by Schmidt that all such damage from any named storm was covered. The Mladineos did not obtain a separate flood insurance policy on the property, although John admits he knew such a policy was available. They alleged this was because Schmidt had advised John that the property was not in a flood zone, such a policy would not be required by a mortgage lender, and because the property would be covered for all wind *and water* damage from a named storm through the "hurricane policy." John testified in his deposition that Schmidt never had offered to sell the Mladineos flood insurance. John further alleged he later had learned that the rear portion of the property does, in fact, lie in a flood zone.

2

¶4.     After Schmidt faxed John various quotes for insurance coverage on the Ocean Springs

property, John advised Schmidt that he would purchase a "hurricane policy," and chose a

particular deductible and limit.  Approximately ten days later – on March 10, 2005, the day

the Mladineos closed on the Ocean Springs property – the homeowner's policy became

effective.  The policy premium also was paid on that day.  The Mladineos allege that neither

Schmidt nor the Felsher Agency had provided a copy of the policy for the Mladineos to

review prior to this date.  The purchased policy was written through Nationwide Property &

Casualty Insurance Company.

¶5.     The Mladineos received their homeowner's policy approximately six weeks after the

closing on their Ocean Springs home.  Under the heading of "Hurricane Coverage," the

policy states:

> Coverage under this policy includes loss or damage caused by the peril of
> windstorm during a hurricane.  It includes damage to a building's interior or
> property inside a building caused directly by rain, snow, sleet, hail, sand or
> dust if direct force of the windstorm first damages the building causing an
> opening through which the above enters and causes damage.
>
> *Hurricane coverage does not include loss caused by flooding, including but
> not limited to flooding resulting from high tides or storm surges.*

(Emphasis added.)  In the "Property Exclusions" section of the policy, it further states:

> We *do not cover* loss to any property resulting directly or indirectly from any
> of the following.  Such a loss is excluded even if another peril or event
> contributed concurrently or in any sequence to cause the loss. . . .
> > . . .  Loss resulting from water or water-borne material damage
> > described below *is not covered* even if other perils contributed directly
> > or indirectly to cause the loss.  Water and water-borne material damage
> > means:
> > > 1) flood, surface water, waves, tidal waves, overflow of a body
> > > of water, spray from these, whether or not driven by wind. . . .

3

(Emphasis added.) John testified in his deposition that, upon receipt of the policy, he filed it away and did not read it. The Mladineos had no further conversations with Schmidt regarding this policy prior to Hurricane Katrina.

¶6. Hurricane Katrina hit the Mississippi Gulf Coast on August 29, 2005. Along with extensive damage throughout the entire Gulf region, Katrina severely damaged the Mladineos' Ocean Springs home and the other structures on the property. The Mladineos filed a claim with Nationwide on their Ocean Springs property, and it was denied as to damage caused by water. Nationwide also initially denied coverage on the pier and boathouse that were damaged during Hurricane Katrina, but subsequently paid claims on those structures.

¶7. Thereafter, Schmidt and John had several conversations in person regarding the coverage. The Mladineos allege that Schmidt admitted to John that he never had indicated during negotiations that an exclusion existed in the policy for water damage. Schmidt filed an errors and omissions claim regarding this matter, which he completed in John's presence.

¶8. The Mladineos filed suit against Schmidt, the Felsher Insurance Agency, and Nationwide on September 29, 2006, making the following claims:

  a.  failure of Schmidt and the Felsher Agency to procure the requested coverage;
  b.  negligence by Schmidt, and through him, the Felsher Agency;
  c.  negligent misrepresentation of material facts by Schmidt, and through him, the Felsher Agency;
  d.  independent tort against Schmidt and the Felsher Agency for misrepresentations made in an alleged attempt to cover Schmidt's actions;
  e.  Nationwide is bound by the representation of its agents and should be required to provide coverage in accordance with such representations;

4

f.  Nationwide breached the implied duty of good faith and fair dealing contained in the contract between itself and the Mladineos;

g.  tortuous breach of contract against Nationwide; and

h.  Nationwide, Schmidt and the Felsher Agency acted in bad faith.

The Mladineos demanded judgment in their favor and requested the insurance coverage they allegedly had requested originally, compensatory damages, punitive damages, interest and attorney's fees.

¶9.   The matter was removed to federal court and subsequently was remanded. Thereafter, the Honorable Billy G. Bridges, Senior Status Judge, was specially appointed to preside over the matter in the Circuit Court of Jackson County. The parties began discovery and entered into an Agreed Scheduling Order.

¶10.   After extensive discovery, the defendants – Schmidt, the Felsher Agency, and Nationwide – filed a motion for summary judgment.  In the motion, the defendants asserted that there is no genuine issue of material fact as to any of the Mladineos' claims.  The defendants claimed the negligence, negligent-misrepresentation, and independent-tort claims fail because Mississippi law imposes on insureds a duty to read their insurance contracts and imputes to them knowledge of the contents of such contracts. Therefore, the defendants asserted that reliance on any misrepresentation which would have been clarified by reading the policy is *per se* unreasonable.  Further, the defendants asserted that the Mladineos' failure-to-procure claim fails because, once the policy has been delivered, the insured has a duty to read it, is imputed with knowledge of its terms, and has the responsibility to cure any deficiencies regarding what coverage is actually contained in the policy as compared to what coverage was requested.

¶11. The defendants' motion for summary judgment further argued that the Mladineos' claims for breach of contract and breach of the implied duty of good faith and fair dealing fail because Nationwide enforced its policy as written. Further, the defendants asserted that the Mladineos' bad-faith claim should be dismissed because Nationwide had a legitimate or arguable reason to deny payment of the Mladineos' insurance claim. For the same reason, the defendants asserted that the Mladineos's claim for punitive damages should be dismissed.

¶12. The Mladineos filed a response to the defendants' motion for summary judgment. In it, they labeled the "duty-to-read" and "imputed-knowledge" doctrines raised by the defendants an affirmative defense. The Mladineos asserted that the defendants had waived such defense by participating in the litigation for more than two years without raising the defenses. The Mladineos further claimed that the "duty-to-read" and "imputed-knowledge" doctrines do not automatically bar the Mladineos' claims, but rather, there are factual determinations that must be considered and weighed by a jury to evaluate the applicability of those claims.

¶13. The defendants filed a rebuttal in support of their original motion for summary judgment, which asserted that the "duty to read" is a settled principle of Mississippi law, not an affirmative defense. Further, the defendants contended their motion for summary judgment was in compliance with the agreed scheduling order entered in the matter. Finally, the defendants argued that each of the Mladineos' claims should be dismissed through summary judgment, as no genuine issue of material fact existed as to any of them.

6

¶14.    The Mladineos filed their own motion for partial summary judgment as to the defendants' defenses regarding the "duty-to-read" and "imputed-knowledge" doctrines. The Mladineos requested the court dismiss those claims as waived by the defendants.

¶15.    After a hearing on the matter, the trial court granted the defendants' motion for summary judgment as to each of the Mladineos' claims.  The trial court found that the defendants did not waive their right to rely upon the "duty to read," and that the doctrine is a principle of law and not an affirmative defense.  Further, the trial court found Mississippi law imposes a duty on insureds to read their insurance policies, and that the Mladineos' reliance on Schmidt's representations that contradicted the plain language of the policy was *per se* unreasonable.   Therefore, the trial court held that the Mladineos' misrepresentation claim failed as a matter of law.

¶16.    The trial court further found the Mladineos' failure-to-procure and negligence claims failed because of the "duty-to-read" and "imputed-knowledge" doctrines, reasoning that four months was ample time for the Mladineos to have read their policy and raise any objections regarding the coverage or lack thereof.  Therefore, regardless of whether the Mladineos requested coverage they did not receive, the trial court held that they could not establish that any failure on the part of Schmidt or the Felsher Agency was the cause of any damages resulting from the lack of coverage.

¶17.    Furthermore, the trial court found that, because none of Nationwide's actions contradicted the plain language of the written policy the Mladineos had purchased, there was no genuine issue of material fact as to the Mladineos' breach-of-contract, tortious-breach-of-contract, and breach-of-the-duty-of-good-faith-and-fair-dealing claims. The trial court found

7

that the Mladineos' independent-tort and bad-faith claims failed as a matter of law because Nationwide had a legitimate or arguable basis for its coverage decisions. Finally, the trial court found that Nationwide owed no duty to the Mladineos to investigate the errors-and-omissions incident report filed by Schmidt, and a claim for bad faith could not be premised on an alleged failure by Nationwide to investigate the report.

¶18. The trial court dismissed all of the Mladineos' claims with prejudice. The Mladineos now appeal and raise the following issues:

I. Whether the Mladineos are entitled to present evidence of their failure-to-procure, negligent-misrepresentation, and other claims and to have those issues and the issues of comparative fault and causation determined by a jury, rather than have those issues decided on a motion for summary judgment.

II. Whether the Mladineos' claims of negligence, negligent misrepresentation, and failure to procure are automatically barred by the "duty-to-read" defense.

III. Whether Nationwide had a duty to conduct a fair, prompt and adequate investigation of the claims of agent error and whether failure to do so is actionable in tort.

IV. Whether the defendants waived the "duty-to-read" defense.

V. Whether the "duty to read" automatically bars a claim against an insurance company for the misrepresentations of its agent acting with apparent authority.

VI. Whether considerations of public policy prohibit the application of the "duty to read" as interpreted by the trial court.

**DISCUSSION**[1]

---

[1] The issues will not be discussed in the order in which the Mladineos raised them. However, each issue will be addressed.

¶19.    The well-established standard of review on a trial court's grant of summary judgment is *de novo*. ***Duckworth v. Warren***, 10 So. 3d 433, 436 (Miss. 2009) (citing ***One South, Inc. v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007)).   Where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" summary judgment is appropriate. ***Id.*** (citing Miss. R. Civ. P. 56(c)). *See also* ***Johnson v. City of Cleveland***, 846 So. 2d 1031, 1034-35 (Miss. 2003). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made." ***Id.*** (quoting ***One South***, 963 So. 2d at 1160). The burden is on the moving party to "demonstrat[e] that [no] genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." ***Id.***  Where there are undisputed facts which are susceptible to more than one interpretation, summary judgment is inappropriate. ***Id.***  (citing ***Johnson***, 846 So. 2d at 1036).

## I.    Whether the Defendants Waived the "Duty to Read."

¶20.    We will begin our discussion with the fourth issue the Mladineos raise on appeal: whether the defendants waived their right to rely on the "duty-to-read" and "imputed-knowledge" doctrines. The foundation of this argument is the proposition that the "duty-to-read" and "imputed-knowledge" doctrines constitute an affirmative defense. The Mladineos assert that, because the defendants did not include the "affirmative defense" in their denial letters to the Mladineos prior to litigation, failed to plead the "duty-to-read" and "imputed-knowledge" doctrines as an affirmative defense in any responsive pleading filed in this case

prior to filing the motion for summary judgment, and actively participated in the litigation for more than two years before raising the "affirmative defense" in the motion for summary judgment, they waived their right to pursue the "affirmative defense."

¶21.     Because the Mladineos label the "duty to read" as an affirmative defense, they claim this Court's ruling in *MS Credit Center, Inc. v. Horton* controls. *See MS Credit Center, Inc. v. Horton*, 926 So. 2d 167 (Miss. 2006). In *Horton*, this Court held that a substantial and unreasonable delay in pursuing the right to compel arbitration, coupled with active participation in the litigation process, waived that right. *Id*. at 180. We further explained, "a defendant's failure to timely and reasonably raise and pursue the enforcement of *any* affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *Id.* (emphasis added).

¶22.     Here, the trial court held that the the Mladineos' "waiver argument [was] misplaced." and explained that the defendants' motion for summary judgment was "based on well-settled principles of Mississippi law, not an 'affirmative defense' as [the Mladineos] suggest." The trial court further found that the defendants had complied with the agreed scheduling order entered into between the parties in filing the motion for summary judgment, and that *Horton* was, therefore, inapplicable.

¶23.     We agree with the trial court. The "duty-to-read" and "imputed-knowledge" doctrines, as discussed in Section II, *infra*, are substantive rules of law. The defendant's defense is simply that the language of the policy the Mladineos purchased excludes the coverage the Mladineos are attempting to claim. The defendants asserted this in their

10

Answer, in which they stated "coverage provisions and exclusions of Plaintiff's Nationwide homeowner's policy speak for themselves." This language put the Mladineos on notice that the defendants intended to rely on the policy language and its exclusions in the course of this litigation.

¶24. Because the motion for summary judgment was filed within the time frame established by the parties in their agreed scheduling order, the trial court did not err in finding the Mladineos' waiver argument to be misplaced. The "duty-to-read" and "imputed-knowledge" doctrines are substantive rules of law – not affirmative defenses, as the Mladineos contend. Accordingly, we affirm the trial court as to this issue.

## II.     Negligence, Failure to Procure, and Negligent Misrepresentation

¶25. The first and second issues the Mladineos raise on appeal was whether the "duty-to-read" and "imputed-knowledge" doctrines automatically bar the negligence, negligent-misrepresentation, and failure-to-procure-the-requested-coverage claims against Schmidt and the Felsher agency, and whether the Mladineos are entitled to present evidence of those claims for determination by a jury.

*The "Duty-to-Read" and "Imputed-Knowledge" Doctrines*

¶26. This Court has held as a matter of law that an insured is charged with the knowledge of the terms of the policy upon which he or she relies for protection. *Atlas Roofing Mfg. Co., Inc. v. Robinson & Julienne, Inc.*, 279 So. 2d 625, 629 (Miss. 1973). Again, we emphasized that "knowledge of an insurance policy is imputed to an insured regardless of whether the insured read the policy." *Oaks v. Sellers*, 953 So. 2d 1077, 1083-84 (Miss. 2007). This Court repeatedly has held this. *See Stephens v. Equitable Life Assurance*

11

***Soc'y of U.S.***, 850 So. 2d 78, 83 (Miss. 2003) ("insureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy"); ***Cherry v. Anthony, Gibbs, Sage***, 501 So. 2d 416, 419 (Miss. 1987) ("Even if [the insureds] had not [read the subject insurance policy], knowledge of its contents would be imputed to them as a matter of law."); ***Zepponi v. Home Ins. Co.***, 248 Miss. 828, 833-34, 161 So. 2d 524 (Miss. 1964) (holding as a matter of law that where the insured's mortgagee required insurance and had possession of the subject insurance policy, the insured is charged with knowledge of the terms of the policy because he relied on the policy for protection). Thus, the "duty-to-read" and "imputed-knowledge" doctrines are firmly rooted in Mississippi precedent.

¶27.    The Mladineos attempt to distinguish the present matter from many of these cases by pointing out that the insureds in those matters had possession of their policies for far longer than the Mladineos did. The Mladineos had possession of their policy for approximately four months prior to Hurricane Katrina, whereas the insureds in many of the above-referenced cases had their policies for much longer – some as long as twenty-nine years. However, the Mladineos did have possession of their policy for four months – enough time to have read the policy – and are imputed with knowledge of the policy's contents pursuant to our precedent.

*Negligence*

¶28.    The elements of a negligence claim are duty, breach of duty, proximate cause, and damages. ***Holiday v. Pizza Inn, Inc.***, 659 So. 2d 860, 864 (Miss. 1995) (quoting ***Skelton v.***

12

*Twin County Rural Elec. Ass'n*, 611 So. 2d 931, 936 (Miss. 1992)). In their complaint, the Mladineos claim that Schmidt, and, through him, the Felsher Agency:

> . . . were negligent in not properly and completely inspecting the property; in not seeing the obvious pier and boathouse to the rear of the property; by not taking further precautions about procuring coverage for damage which could be caused by water, given the fact that the rear portion of the property was in a flood zone; by not ascertaining the exact flood plain status of the subject real property; by not informing John of the exact flood plain status of the subject real property . . .

In his deposition, John Mladineo testified that Schmidt had told him, "Since you're not in the flood plain,[2] the bank would not require a separate flood insurance policy." John testified that Schmidt told him this in response to John's question as to whether a "hurricane policy" would cover all wind and water damage.

¶29.    An insurance agent must use that degree of diligence and care with reference thereto which a reasonably prudent [person] would exercise in the transaction of his own business. *McKinnon v. Batte*, 485 So. 2d 295, 297 (Miss. 1986) (quoting *Security Ins. Agency, Inc. v. Cox*, 299 So. 2d 192, 194 (Miss. 1974)). *See also Taylor Machine Works, Inc. v. Great American Surplus Lines Ins. Co.*, 635 So. 2d 1357, 1362 (Miss. 1994); *Security Ins. Agency, Inc. v. Cox,* 299 So. 2d 192, 194 (Miss. 1974); *and First United Bank of Poplarville v. Reid*, 612 So. 2d 1131, 1137 (Miss. 1992). It is a question of fact whether Schmidt breached this duty by allegedly informing the Mladineos that their property was not in a flood plain and counseling against flood insurance. Further, it is a question of fact whether any such breach proximately caused any damages to the Mladineos, such as

---

[2] The Mladineos allege they later learned the rear portion of their property was, in fact, in a flood plain.

uninsured claims resulting from a lack of flood coverage. While the dissent believes our position to be contradictory, it is not. We are not "carving out an exception to the 'duty to read.'" These alleged omissions and misrepresentations are not barred by the "imputed knowledge" of the policy because they are not misrepresentations that would have been disclosed by reading the policy. *Ballard v. Commercial Bank of DeKalb*, 991 So. 2d 1201, 1207 (Miss. 2008). The Mladineos are barred from arguing that they did not know what was in the policy. We have not yet said that they are barred from arguing that Schmidt's alleged negligence caused them to underestimate the coverage they would need, making summary judgment improper.

¶30.　Other jurisdictions have dealt more specifically with pure negligence claims against insurance agents. In *Southwest Auto Painting and Body Repair, Inc. v. Binsfeld*, the Arizona Court of Appeals reversed summary judgment where store owners were not advised of the availability of fidelity coverage. *Southwest Auto Painting and Body Repair, Inc. v. Binsfeld*, 183 Ariz. 444, 904 P.2d 1268, 1272 (Ariz. App. Div. 1, 1995). In contrast, the New Hampshire Supreme Court has criticized this rule, saying "[An agent's] general duty of care [to the insured] excludes an affirmative obligation to give advice regarding the availability or sufficiency of coverage." *Sintros v. Hamon*, 148 N.H. 478, 481, 810 A.2d 553, 555 (N.H. 2002). A majority of states hold that a special relationship could impose upon an insurance agent an affirmative duty to provide advice regarding the availability or sufficiency of insurance coverage. *See, e.g.*, *Harts v. Farmers Ins. Exchange*, 461 Mich. 1, 10, 597 N.W.2d 47, 52 (1999); *Murphy v. Kuhn*, 90 N.Y. 2d 266, 269, 682 N.E.2d 972, 974-75 (1997).

14

¶31. While their imputed knowledge prohibits the Mladineos from relying on the characterization of their policy as a "hurricane policy" to get coverage not provided on the face of the policy, they may argue that, but for Schmidt's misrepresentation of the fact that their property was in a flood plain, they would have bought flood coverage. Even actual knowledge and understanding of every word, phrase, and idea of the policy does not preclude the possibility that they may have bought more extensive coverage absent Schmidt's alleged negligence.

¶32. We go further to clarify that, contrary to a minority of jurisdictions, we do not find that insurance agents in Mississippi have an affirmative duty to advise buyers regarding their coverage needs. The majority of jurisdictions have stated strong policy reasons for finding that an agent does not have an affirmative duty to advise the insured of coverage needs: insureds are in a better position to assess their assets and risk of loss,[3] coverage needs are often personal and subjective,[4] and imposing liability on agents for failing to advise insureds regarding the sufficiency of their coverage would remove any burden from the insured to take care of his or her own financial needs.[5] However, we find that if agents do offer advice to insureds, they have a duty to exercise reasonable care in doing so. A jury should be allowed to decide whether reasonable care was exercised here.

¶33. Therefore, summary judgment was improperly granted as to this issue. The Mladineos' negligence claim against Schmidt, and through him, the Felsher Agency, is

---

[3] *Peter v. Schumacher Enters., Inc.*, 22 P. 3d 481, 486 (Alaska 2001).

[4] *Sadler v. Loomis*, 139 Md. App. 374, 776 A. 2d 25, 40 (2001).

[5] *Nelson v. Davidson*, 155 Wis. 2d 674, 456 N.W. 2d 343, 346 (1990).

remanded to the trial court for further proceedings to determine if Schmidt's alleged representation regarding the Mladineos' need, or lack thereof, of flood insurance breached his professional duty and proximately caused any damage to the Mladineos.

*Failure to Procure the Requested Coverage*

¶34. The Mladineos allege that Schmidt and the Felsher Agency breached their duty to procure the insurance coverage the Mladineos requested. The trial court granted summary judgment to the defendants on this issue and found that, "where an insured has such fair notice of the terms of his policy and ample time to reject it if he considers it insufficient, he cannot complain that his agent failed to obtain requested coverage."

¶35. As stated above, the elements of a negligence claim are duty, breach of duty, proximate cause, and damages. *Holiday v. Pizza Inn, Inc.*, 659 So. 2d 860, 864 (Miss. 1995) (quoting *Skelton v. Twin County Rural Elec. Ass'n*, 611 So. 2d 931, 936 (Miss. 1992)). With respect to the element of duty in the present matter, it is well-settled that if an insurance agent or broker with a view to being compensated agrees to procure insurance for another and through fault or neglect fails to do so, he will be liable for any damage that results thereby. *McKinnon*, 485 So. 2d at 297 (quoting *Simpson v. M.P. Enter., Inc.*, 252 So. 2d 202, 207 (Miss. 1971)).

¶36. Here, it is disputed whether Schmidt, and through him, the Felsher Agency, breached this duty. The Mladineos clearly have damages, as they have incurred uninsured losses caused by Hurricane Katrina. The central inquiry is causation – if Schmidt breached his duty as an insurance agent, did that proximately cause the Mladineos' injury?

16

¶37. John claims he made a request for insurance coverage, including both wind and water damage for any named storm. However, the rule of this Court for more than a century has been:

> The [insurance] policy itself [is] notice to the assured that the company . . . assured against loss to [the] extent [of the policy's language] *only*; that it *expressly excluded* every interest from the insurance, unless the assured immediately notified it that there was a different interest, and procured a written consent thereto. *The silent acceptance of the policy by the assured closed the contract, and bound the assured to the agreement tendered by the policy . . .*

***Rosenstock v. Miss. Home Ins. Co.***, 82 Miss. 674, 35 So. 309, 311 (1903) (emphasis added). Mladineo admitted he knew that flood policies can be purchased separately from homeowner's policies, yet he did not request such a policy at the time of the initial negotiations, or after receipt of the subject policy. As quoted *supra*, the policy language clearly excludes damage from water – and the Mladineos' silent acceptance of this policy bound them to its terms.

¶38. The trial court was correct: *even if* Schmidt breached his duty as an insurance agent to procure the requested coverage, the Mladineos' silence was the proximate cause of their damage. If they had executed their duty to read the policy, they would have noticed that the policy plainly did not cover the things that they assumed "hurricane" policies would cover. Therefore, the trial court is affirmed as to the dismissal of the claim for negligent failure to procure requested coverage.

*Negligent Misrepresentation*

¶39. The Mladineos also claim Schmidt negligently misrepresented the terms of their policy, which caused the Mladineos damage. "In order to establish negligent

17

misrepresentation, the following elements must be proven: '(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.'" *Hazlehurst Lumber Co., Inc. v. Miss. Forestry Comm'n*, 983 So. 2d 309, 313 (Miss. 2008) (quoting *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (Miss. 2007)).

¶40.    This issue turns on whether the Mladineos' reliance on any alleged misrepresentations by Schmidt was reasonable.   Schmidt's alleged misrepresentations regarding the need for flood insurance have been discussed above in the context of simple negligence. We reiterate that we think summary judgment for those claims was improper.   Those claims also could be brought under a theory of negligent misrepresentation.

¶41.    But as for misrepresentations that could have been cleared up by reading the policy, we affirm the trial court.  Specifically, the Mladineos allege that Schmidt assured them their property would be covered for all damage from a named storm under the policy they purchased, including damage caused by water.   The Mladineos argue that they had no document in their possession at the time Schmidt and the Felsher Agency made the alleged misrepresentations regarding the terms of the policy.   They contend that the alleged misrepresentations were material and took place weeks before the policy with the contrary terms was delivered to them.   Because the Mladineos had their policy in hand for only four

18

months prior to Hurricane Katrina, they argue that it is a question for the jury whether reliance on Schmidt's misrepresentations was reasonable.

¶42. We repeatedly have held, "insureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy. Any alleged oral agreement . . . does not have any effect on the written insurance contract." *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 83 (Miss. 2003). This Court further stated that a contracting party "will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." *Id*. (quoting *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.*, 584 So. 2d 1254, 1257 (Miss. 1991)).

¶43. The Mladineos rely on this Court's rulings in *United Insurance Co. v. Merrill*, 978 So. 2d 613 (Miss. 2007), and *American Income Life Insurance Co. v. Hollins*, 830 So. 2d 1235 (Miss. 2002), as support for their position that reliance on the alleged misrepresentations of Schmidt was reasonable. In *Merrill,* the life insurance policy at issue contained a two-year incontestability clause, in which the insurance company reserved the right to deny the claims on certain bases if the insured died within two years of purchasing the policy. The insurance agent testified that she had been instructed by the insurance company to tell applicants that "someone always pays." *Merrill*, 978 So. 2d at 622. The agent further testified that she had not been informed of the incontestability clause by the insurance company and did not inform the plaintiff of such a clause while selling the policy. *Id.*

19

¶44.    The insurance company objected to this testimony on appeal.  In analyzing whether the trial court properly admitted the insurance agent's testimony, this Court said:

> [The insurance company] argues that knowledge of the incontestability clause should have been imputed to the [insureds] as it is the law that a person is bound by the . . . documents that they sign.  However, the [insureds] did not have [the policy] at the time they applied . . . .This might be true as applied to the [insureds] after they received the policy. . . .

*Merrill*, 978 So. 2d at 632 (internal citations omitted). The Mladineos argue that this Court found that the "duty-to-read" doctrine was inapplicable in *Merrill*, based in the foregoing quote.  This is not a correct reading of the *Merrill* case.  We said knowledge of the incontestability clause should have been imputed to the insureds  "*after* they received the policy, " as is the case in the present matter. *Id.* (emphasis added).  A duty to read cannot be placed on one who *not yet* received the policy.

¶45.    *Hollins*  is a plurality opinion from this Court in which the plaintiff sought a hospital indemnity insurance policy. In response to a specific question from the plaintiff, the insurance agent told her that, as long as she had not undergone surgery for a pre-existing condition, it would be covered by the policy. At the time the agent made this statement to her, the plaintiff had not been notified that the policy specifically excluded pre-existing conditions.   The *Hollins* plaintiff did not receive the policy until sometime after the application was complete and the premium had been paid.  The policy stated that "[n]o agent may change this policy or waive any of its provisions."  This Court held that the plaintiff already had  relied on the agent's statement prior to receiving it.  The plurality opinion went on to state:

20

> That [the plaintiff] did not read it does not alter the fact that she relied on [the agent's] statements before the policy was provided to her. The exclusion contained in the policy, while unambiguous, was not made available until after she had purchased the insurance in reliance on [the agent's] statement. Because [the plaintiff] was not informed otherwise prior to relying on [the agent's] statement, her reliance on the statement that her [pre-existing] condition would be covered was reasonable.

*Hollins,* 830 So. 2d at 1237-1238.

¶46. This holding in *Hollins* directly contradicts our well-settled precedent regarding an insured's duty to read his or her policy. *See e.g. Gulf Guar. Life Ins. Co. v. Kelley*, 389 So. 2d 920, 922 (Miss. 1980) ("[An insured] may not neglect or purposely omit acquainting himself with the terms and conditions of the insurance policy and then complain of his ignorance of them.") Where *Hollins* is contradictory to the "duty-to-read" and "imputed-knowledge" doctrines, it is hereby overruled.

¶47. Based on the foregoing analysis, the Mladineos reasonably cannot have relied on the alleged assurances of coverage by Schmidt that directly contradicted the plain language of the policy they had in their possession. Because at least one of the elements required for a negligent-misrepresentation claim is not present, we affirm the trial court's grant of summary judgment as to the claim of negligent misrepresentation.

### III. Whether the "Duty to Read" Automatically Bars Claims Against Nationwide.

¶48. The fifth issue raised by the Mladineos is whether the "duty-to-read" and "imputed-knowledge" doctrines automatically bar claims against Nationwide for the alleged misrepresentations of its agents, Schmidt and the Felsher Agency, who the Mladineos allege acted with apparent authority. The Mladineos allege that Nationwide is bound by the

21

alleged representation of its agents that the subject policy covered both wind and water damage to the Mladineos' Ocean Springs home. The trial court granted summary judgment to the defendants on all of the Mladineos' claims, including whether Nationwide was liable for Schmidt's alleged misrepresentations.

¶49. "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1180 (Miss. 1990) (quoting *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987)). To recover under the theory of apparent authority, the following three factors must be present: (1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance. *Id*.

¶50. The Mladineos again look to this Court's holdings in *Merrill* and *Hollins* as support for their argument that Mississippi law supports holding Nationwide responsible for the acts of its agent. However, in making this argument, the Mladineos miss a key factual distinction between those cases and the present case: the agent made misrepresentations to the insurance company in *Merrill* and *Hollins*, not to the consumer, as alleged in the present matter.

¶51. As stated above, *Hollins* involved a hospital indemnity policy, while *Merrill* involved a life insurance policy. In both matters, the agent took charge of the policy applications and asked the plaintiffs the questions contained therein. Although both applicants were truthful in their responses, both applications misrepresented prior health history of the applicants. When claims were filed pursuant to these policies, they were denied in both matters due to

the misrepresentations on the application, and the ***Hollins*** policy was rescinded, while the premiums paid on the ***Merrill*** policy were refunded.

¶52.    This Court has said, "in cases where the agent takes charge of the application or suggests the answers to the question, the company shall not avoid the policy because they are false or untrue, if full disclosures were made by the applicant to him." ***Hollins***, 430 So. 2d at 1235 (citing ***McCann v. Gulf Nat'l Life Ins. Co.,*** 574 So. 2d 654, 657 (Miss. 1990).

¶53.    The facts in the present matter are not similar to those in ***Merrill*** and ***Hollins***.  Here, the alleged misrepresentation by the agent was made to the consumer (the Mladineos), not to the insurance company (Nationwide).  For four months, the Mladineos had possession of a policy with terms in direct conflict with the alleged misrepresentation, which was enough time to recognize and remedy the deficit in coverage.  Further, as discussed in Section II, *supra*, after receipt of the insurance policy, it was not reasonable for the Mladineos to rely on any oral representations by Schmidt which contradicted the terms of that policy. Nationwide's denial of claims as to flood damage is in accordance with the terms of that policy.  Therefore, the trial court is affirmed as to this issue.

### IV.    Public Policy

¶54.    The sixth issue raised by the Mladineos is whether considerations of public policy prohibit the application and interpretation of the "duty-to-read" and "imputed-knowledge" doctrines as interpreted by the trial court.  The crux of the Mladineos' argument is that if the "duty-to-read" and "imputed-knowledge" doctrines are interpreted and applied as the trial court applied them, insurance companies and their agents may induce consumers to purchase policies through misrepresentation and face no liability for such behavior by simply

23

delivering to the consumers a policy with different terms after the transaction is complete. The defendants, on the other hand, argue that prohibiting the "duty-to-read" defense would allow insureds knowingly to underinsure themselves and then complain that they did not get the coverage they requested after sustaining an uncovered loss.

¶55.    Mississippi law is very clear: insureds are imputed with knowledge of the contents of their insurance policy, whether or not they have read the policy.  It is therefore not against the public policy of this state to hold them to have knowledge of their insurance policy's contents.

¶56.    Also, Mississippi law requires insurance companies and their agents to adhere to the standard of care for their profession, and they will be liable for any breach of this standard of care which proximately causes damages.  Further, principals can be bound by the acts of their agents when the relevant three-part test is met.[6]  Accordingly, agents and insurance companies cannot market, sell, and induce consumers to purchase policies through misrepresentations and be absolved of liability simply by delivering the subject policy to the insureds, as the Mladineos contend.

¶57.    For the foregoing reasons, the "duty-to-read" and "imputed-knowledge" doctrines, as applied by the trial court, are not in conflict with the public policy of this State.  This issue is without merit.

> **V.    Nationwide's Investigation of Schmidt's Errors-and-Omissions Claim**

---

[6] *See e. g., **Andrew Jackson Life Ins. Co. v. Williams***, 566 So. 2d 1172 (Miss. 1990) (holding Andrew Jackson Life Insurance Company to be bound by the contract formed by its apparently authorized agents.)

24

¶58. Finally, we will discuss the third issue raised on appeal by the Mladineos: whether Nationwide owed the Mladineos a duty to conduct a fair, prompt, and adequate investigation of the errors-and-omissions claim filed by Schmidt, and whether violation of such duty is actionable in tort. The Mladineos allege that Nationwide had a legal duty to deal fairly and in good faith with its insured in order to conduct a prompt, reasonable, and adequate investigation into whether Schmidt had committed negligence in the procurement of the specifically requested insurance coverage.

¶59. The Mladineos point out that Mississippi law imposes a duty on the insurance company promptly and fully to investigate any claim. *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 623 (Miss. 1988). The Mladineos complain that the investigation of Schmidt's errors-and-omissions claim was not adequate and did not meet the standard set forth in *Bristow*.

¶60. However, no duty exists on the part of Nationwide to investigate the errors and omissions of its agents in the present matter. The Mladineos admit that this is "an action by a policyholder *against its insuror.*" While *Bristow* requires that insurance companies adequately investigate claims made *against the insurance policies* they provide, it does not impose a duty on insurance companies to investigate claims *against the company itself*. Therefore, the trial court was correct in granting summary judgment as to this issue.

## CONCLUSION

¶61. In conclusion, the defendants did not waive their right to rely on the "duty-to-read" and "imputed-knowledge" doctrines. Therefore, the Mladineos' claims for failure to procure the requested coverage and negligent misrepresentation fail as a matter of law, because the

25

Mladineos had a duty to read their insurance policy, were imputed with knowledge of its contents, and cannot reasonably rely on any oral statements which contradict the unambiguous terms of the contract. Nationwide cannot be held liable through the theory of apparent authority in this matter, nor did Nationwide owe the Mladineos a duty to investigate the errors-and-omissions claims filed by Schmidt. Therefore, summary judgment was proper as to these issues, as well as to public policy. However, the trial court's grant of summary judgment on the claim of negligence in this matter is reversed and remanded for further proceedings as to that issue. The trial court's judgment is affirmed in part, reversed in part and remanded.

¶62.    **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND CHANDLER, JJ., CONCUR. KITCHENS, J., DISSENTS, WITH SEPARATE WRITTEN OPINION. GRAVES, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**KITCHENS, JUSTICE, DISSENTING:**

¶63.    The majority theorizes that "[t]he 'duty-to-read' and 'imputed-knowledge' doctrines are substantive rules of law – not affirmative defenses." Maj. Op. at ¶ 24. Because I do not agree that substantive rules of law cannot be affirmative defenses, I dissent.

¶64.    Mississippi Rule of Civil Procedure 8(c) provides in pertinent part:

In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.*

M.R.C.P. 8(c) (emphasis added). Every defense specifically mentioned or alluded to in this rule is an established principle of law, and each is subject to waiver if not properly and timely pled. We have interpreted Rule 8(c) of the Mississippi Rules of Civil Procedure "to mean that, generally, if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived." *Hutzel v. City of Jackson*, 33 So. 3d 1116, 1119 (Miss. 2010) (citing *Pass Termite and Pest Control, Inc. v. Walker*, 904 So. 2d 1030, 1033 (Miss. 2004). Because the defendants failed to raise affirmatively the plaintiffs' duty to read the insurance policy and their imputed knowledge of the contents of the policy as defenses in any responsive pleading and thereafter participated actively in the litigation process for nearly two years before moving for summary judgment, the defendants have waived the right to raise these defenses, which obviously are affirmative in every sense.

¶65.   In *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167 (Miss. 2006), this Court considered whether a defendant's failure to pursue actively the right to compel arbitration for eight months amounted to a waiver of that defense. We held that, where a defendant failed "timely and reasonably [to] raise and pursue the enforcement of *any* affirmative defense or other affirmative matter . . . , coupled with active participation in the litigation process," the defense ordinarily will have been waived. *Id*. at 180 (emphasis added). However, we declined to set a minimum number of days which will constitute an unreasonable delay, but did hold "that – absent extreme and unusual circumstances – an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right . . . constitutes waiver as a matter of law." *Id.*

¶66. In compliance with the rule announced in **Horton**, "this Court consistently has held that, absent a reasonable explanation, failure to plead an affirmative defense according to Rule 8(c) will result in a waiver of that defense." **Hutzel**, 33 So. 3d at 1120. In **Hutzel**, we held that a defendant's failure to assert and pursue actively the affirmative defense of accord and satisfaction for twenty-six months while actively participating in the litigation, with no reasonable explanation for such delay, amounted to a waiver. **Hutzel**, 33 So. 3d at 1121-1122.

¶67. In this case, the plaintiffs filed their original complaint on September 26, 2006. The defendants participated actively in the litigation process by engaging in written discovery, deposing witnesses, and designating an expert witness. It was not until September 18, 2008, that the defendants filed their motion for summary judgment, based on duty-to-read and imputed-knowledge defenses. The defendants participated in the litigation actively for almost two full years before asserting the duty-to-read and imputed-knowledge defenses. The failure of the defendants to plead these defenses in a timely manner, coupled with their active participation in the litigation process, bars the defendants from belatedly asserting them, and it was error for the trial judge to dismiss this case on summary judgment on the basis of such untimely defenses.

¶68. Accordingly, I would reverse the trial court's grant of summary judgment and remand the case for further proceedings.

**GRAVES, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

28

¶69. I disagree with the majority's holding that summary judgment was improperly granted as to the issue of whether Schmidt breached his duty as an insurance agent and proximately caused any damages to the Mladineos. Because I would explicitly affirm the trial court in toto, I respectfully concur in part and dissent in part.

¶70. As stated by the majority, this Court repeatedly has held that knowledge of an insurance policy is imputed to an insured regardless of whether he has read the policy. *See Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 83 (Miss. 2003); *Oaks v. Sellers*, 953 So. 2d 1077, 1083-84 (Miss. 2007); *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987); and *Atlas Roofing Mfg. Co. v. Robinson & Julienne, Inc.*, 279 So. 2d 625, 629 (Miss. 1973).

¶71. The majority finds that the "Mladineos did have possession of their policy for four months – enough time to have read the policy – and are imputed with knowledge of the policy's contents pursuant to our precedent." (Maj. Op. at ¶ 27). The majority then offers an analysis of the negligence claim, correctly pointing out that the elements of a negligence claim are duty, breach of duty, proximate cause and damages. (Maj. Op. at ¶ 28). The majority finds that it is a question of fact whether Schmidt breached his duty or proximately caused any damages to the Mladineos. The majority holds that summary judgment was improperly granted, and remands the negligence claim against Schmidt to the trial court for proceedings to determine whether Schmidt breached his duty and proximately caused any damages. However, in the same opinion, the majority also holds:

> The trial court was correct: *even if* Schmidt breached his duty as an insurance agent to procure the requested coverage, the Mladineos' silence was the proximate cause of their damage. If they had executed their duty to read

29

the policy, they would have noticed that the policy plainly did not cover the things that they assumed "hurricane" policies would cover. Therefore, the trial court is affirmed as to the dismissal of the claim for *negligent failure to procure requested coverage.*

(Maj. Op. at ¶ 38) (emphasis original).

¶72. The majority's analysis is contradictory. The proximate cause of the Mladineos' damages would remain the same under a negligence theory or a negligent-failure-to-procure theory. Likewise, the duty to read and the imputed-knowledge provisions would apply under both theories. Further, the majority also applies those provisions to the negligent-misrepresentation theory. The majority holds:

> Based on the foregoing analysis, the Mladineos reasonably cannot have relied on the alleged assurances of coverage by Schmidt that directly contradicted the plain language of the policy they had in their possession. Because at least one of the elements required for a negligent-misrepresentation claim is not present, we affirm the trial court's grant of summary judgment as to the claim of negligent misrepresentation.

(Maj. Op. at ¶ 47).

¶73. The majority contradicts itself once again in the last paragraph when it holds that summary judgment was improper as to the issue of Schmidt's negligence, but was proper as to all other issues, "as well as to public policy." (Maj. Op. at ¶ 61).

¶74. The majority fails to adequately explain how it carves out an exception to the duty to read and the imputed-knowledge provisions under only the negligence theory. The majority also fails to adequately explain how Schmidt possibly could have proximately caused the damages under the negligence theory but not under the negligent-failure-to-procure or negligent-misrepresentation theories, when all three theories are intertwined.

30

¶75. In the second amended complaint, the Mladineos asserted three counts: failure of an agent to procure requested coverage, negligence, and negligent misrepresentation. With regard to the negligence count, the Mladineos reasserted the allegations of their failure-to-procure count and also alleged:

> Said defendants were negligent in not properly and completely inspecting the property; in not seeing the obvious pier and boathouse to the rear of the property; by not taking further precautions about procuring coverage for damage which could be caused by water, given the fact that the rear portion of the property was in a flood zone; by not ascertaining the exact flood plain status of the subject real property; by not informing John of the exact flood plain status of the subject real property; by being unfamiliar with the terms of the policies being marketed; by not informing John of the exclusions under the policy; by not offering flood insurance; by not maintaining proper notes and other documents, including a properly completed and signed application; and by other similar sloppy and negligent acts.

With regard to the negligent-misrepresentation count, the Mladineos also reasserted the allegations in the two prior counts. It is impossible to separate these counts.

¶76. Dr. John Mladineo testified during his deposition that he never had requested a separate flood insurance policy from Schmidt on the unoccupied, two-story home in Ocean Springs. Mladineo further testified that he never had asked Schmidt to investigate and determine the exact flood-plain status of the entire property and that he never read his policy once he received it. Further, Mladineo testified that Schmidt "also indicated 'Since you were not in the flood plain, the bank would not require a flood pol – a separate flood policy.'" Later, Mladineo again testified: "I think his wording was, 'Since you're not in the flood plain, the bank would not require a separate flood insurance policy.'" This testimony does not indicate that Schmidt told Mladineo he did not need flood insurance, but merely says that

31

the bank was not going to require it. Further, the claims for the pier and the boathouse ultimately were paid.

¶77. The majority cites *McKinnon v. Batte*, 485 So. 2d 295, 297 (Miss. 1986), for the duty of an insurance agent. However, *McKinnon* involved a jury verdict for the defendants, as opposed to summary judgment. Also, the *McKinnon* opinion opens with a statement that the "primary issue of this appeal is the duty owed by a licensed surveyor to those with whom he has contracted to perform a survey." *Id*. at 296. More importantly, the portion of *McKinnon* on which the majority relies specifically says:

> "It seems to be a well-settled rule that if an agent or broker with a view of being compensated agrees to procure insurance for another and through fault or neglect fails to do so, he will be liable for any damage that results thereby." *Simpson v. M.P. Enterprises, Inc.*, 252 So. 2d 202, 207 (Miss. 1971). The standard of care of an insurance agent is "to use that degree of diligence and care with reference thereto which a reasonably prudent [person] would exercise in the transaction of his own business." *Security Insurance Agency, Inc. v. Cox*, 299 So. 2d 192, 194 (Miss. 1974).[7] The Court holds the jury was properly instructed as to the applicable standard of care for the defendant Batte.

*McKinnon*, 485 So. 2d at 297.

¶78. Again, the instant case involves summary judgment, not jury instructions. Further, there is no evidence that Schmidt agreed to procure flood insurance for Mladineo and then failed to do so. Finally, there is no basis to find, under the applicable authority, that Schmidt somehow had a duty to sell the Mladineos more insurance than they actually sought to procure or to convince them to purchase additional policies which were not required.

---

[7] *Security Insurance Agency, Inc. v. Cox*, 299 So. 2d 192, 194 (Miss. 1974), was a case involving an agency's duty to inform an insured that his policy on a rental house would not be renewed. Such is not the case here.

¶79.   As acknowledged by the majority, the Mladineos had a duty to read the policy, were imputed with knowledge of its terms and had the responsibility to cure any deficiencies in coverage.  As also acknowledged by the majority, Schmidt was not the proximate cause of the Mladineos' damages.  The claims for negligence, negligent failure to procure, and negligent misrepresentation are intertwined and must be analyzed consistently.  Because I would hold that the trial court must be affirmed in toto, I respectfully concur in part and dissent in part.