WILSON, J., DISSENTING:
 

 ¶ 53. I respectfully dissent. Based on the evidence presented at trial, the chancellor could have found that Keith O'Brien's failure to read the deed he signed was the sole proximate cause of his alleged damages. Therefore, the chancellor's finding that O'Brien failed to "sustain [his] burden of proof" must be affirmed.
 

 ¶ 54. Following a bench trial, the chancellor entered judgment in favor of Andy Alfonso on O'Brien's claim for legal malpractice, ruling as follows:
 

 [O'Brien] alleged that [Alfonso] prepared a deed which included an erroneous description of real estate. [O'Brien]
 

 alleged that this act constituted negligence, and he requested damages. The elements of a negligence action are well-settled in Mississippi. In a negligence action, the plaintiff must prove by a preponderance of the evidence that there was a duty, breach, causation, and damages. In matters tried in chancery court, the chancellor has the sole responsibility to determine the credibility of witnesses and evidence. In this matter, the Court, having considered the testimony of the parties, the evidence presented, and the applicable law, finds that there was insufficient evidence presented by [O'Brien] to sustain [his] burden of proof. As such, the Court finds the negligence claim is DENIED.
 

 (Citations, quotation marks omitted).
 

 ¶ 55. The chancellor did not specify which element(s) of O'Brien's negligence claim that he failed to prove. But no party requested specific findings of fact, and this was not a complex case, so the chancellor's generalized finding of fact was sufficient.
 
 See
 
 M.R.C.P. 52 ;
 
 Carpenter v. Berry
 
 ,
 
 58 So.3d 1158
 
 , 1161-62 (¶¶ 13-15) (Miss. 2011). "Generally, when there are no specific findings of fact, this Court will assume that the trial court made determinations of fact sufficient to support its judgment."
 
 Century 21 Deep S. Props. Ltd. v. Corson
 
 ,
 
 612 So.2d 359
 
 , 367 (Miss. 1992). "Where there are no specific findings of fact provided by the chancellor, this Court must look to the evidence and see what state of facts will justify the decree."
 

 Id.
 

 ;
 
 accord
 

 Par Indus. Inc. v. Target Container Co.
 
 ,
 
 708 So.2d 44
 
 , 47 (¶ 4) (Miss. 1998).
 

 ¶ 56. Alfonso testified that no one ever told him that the deed should convey less than the entire tract of land previously owned by O'Brien. Alfonso testified that he obtained the legal description of the property from the land records, i.e., from the prior deed conveying the property to O'Brien. In fact, Alfonso testified that he remained unsure what part of the property O'Brien intended to convey.
 
 [10]
 
 However, the evidence did tend to show (1) that O'Brien intended to convey only a 2.3-acre lot, not the entire 8.9-acre tract described in the deed that Alfonso prepared; and (2) that a proper title search and examination would have identified this issue because a previously recorded deed conveyed 1.23 of the 8.9 acres from O'Brien to his daughter and son-in-law. Alfonso claimed that he performed a title search, but the record does not include a title report or any other contemporaneous records or notes of Alfonso's, and Alfonso could not explain why he prepared a deed that failed to account for the 1.23 acres that O'Brien had already conveyed. A proper title search would have identified this discrepancy and, at a minimum, prompted further inquiry by Alfonso. Based on this evidence, O'Brien proved negligence. In addition, Alfonso admits an attorney-client relationship with O'Brien.
 

 ¶ 57. Nonetheless, I would affirm the judgment of the chancery court because the record contains facts from which the chancellor could have found that Alfonso's negligence was
 
 not
 
 a proximate cause of any damages. Indeed, this was the issue that Alfonso emphasized in his closing statement in the chancery court. O'Brien and his ex-wife signed a one-page warranty deed that clearly stated that the property being conveyed was described in an attached "Exhibit 'A.' " That one-page exhibit contained only a brief legal description of the land conveyed, which concluded as follows: "Said parcel contains 8.9 acres, more or less and intending to be at same
 land conveyed to Grantors by deed dated September 10, 1993 and recorded in ... the Land Deed Records of Jackson County, Mississippi." If O'Brien had read the warranty deed that he signed, he would have seen that it did not reflect his alleged intent. Therefore, the chancellor could have found that O'Brien's failure to read the deed was the sole proximate cause of any damages.
 

 ¶ 58. Our Supreme Court has made the same basic point in the context of claims against insurance agents alleging negligent failure to procure coverage. The Court has held that an agent has a duty to exercise reasonable diligence and skill to obtain coverage requested by the insured.
 
 See
 

 Mladineo v. Schmidt
 
 ,
 
 52 So.3d 1154
 
 , 1164 (¶ 35) (Miss. 2010) ;
 
 Robichaux v. Nationwide Mut. Fire Ins.
 
 ,
 
 81 So.3d 1030
 
 , 1040 (¶ 30) (Miss. 2011). However, the insured also has a "duty to read [his] policy."
 
 Mladineo
 
 ,
 
 52 So.3d at 1164
 
 (¶ 38). If the terms of the policy presented to the insured "plainly did not cover the things that the [insured] assumed [the policy] would cover," then the insured's own failure to read his policy-not the agent's breach of duty-is "the proximate cause of [the insured's] damage."
 

 Id.
 

 (holding that a policy clearly excluded coverage for water damage; therefore, the insureds' failure to read their policy-not the agent's failure to procure the coverage-"was the proximate cause of their damage");
 
 accord
 

 Bell v. Certain Underwriters at Lloyd's London
 
 ,
 
 200 So.3d 447
 
 , 452-53 (¶ 19) (Miss. Ct. App. 2016) (finding that a policy clearly did not insure a barn on the property; therefore, the insured's failure to read her policy-not the agent's failure to procure the coverage-was the proximate cause of her damages).
 

 ¶ 59. On the evidence in this case, the chancellor could have reached the same conclusion regarding O'Brien's failure to read his warranty deed. Had O'Brien read his deed, he would have seen that it purported to convey 8.9 acres, the entire tract he originally purchased years earlier. Had O'Brien read the deed, the legal description could have been corrected before he conveyed the property to Michael and Mary Ann Rogers, and he would not have suffered any damages. Because the legal description attached to the deed clearly purports to convey 8.9 acres, the chancellor could have found that O'Brien's own failure to read the deed-not Alfonso's negligence-was the proximate cause of any damages.
 

 ¶ 60. Courts in other states have applied this same basic principle in legal malpractice cases. For example, in
 
 Berman v. Rubin
 
 ,
 
 138 Ga.App. 849
 
 ,
 
 227 S.E.2d 802
 
 (1976), an attorney drafted a property settlement agreement for a client in a divorce case, and the client later alleged that the agreement failed to reflect the parties' intent regarding alimony and child support, which resulted in the client being ordered to pay more than the parties had intended.
 

 Id.
 

 at 804
 
 . The Georgia Court of Appeals recognized that although an attorney "is not an insurer of the documents he drafts, the attorney may breach his duty towards his client when, after undertaking to accomplish a specific result, ... he then fails ... to effectuate the intent of the parties."
 

 Id.
 

 at 805
 
 (footnote omitted). The court then held that although the issue of negligence presented a jury question, the attorney was entitled to summary judgment because "[t]he record affirmatively show[ed] that [his] actions were not the cause of the alleged injury to [his client]."
 

 Id.
 

 at 806
 
 . The court reasoned that the property settlement agreement was "not ambiguous, nor [was] it technical or laced with 'legal jargon.' "
 

 Id.
 

 The client initialed and signed each page and reviewed changes to a prior draft.
 

 Id.
 

 The court emphasized that "[t]here are few rules of
 law more fundamental than that which requires a party to read what he signs and to be bound thereby," and that "[t]his rule has particular force when the party is well educated and laboring under no disabilities."
 

 Id.
 

 Because the alleged error would have been apparent to the client had he read the agreement, the client could not "show that [his attorney's] actions, and not his own, were the cause of his alleged injury."
 

 Id.
 

 ;
 
 see also
 

 id.
 

 at 807
 
 (holding that the client's "ability to read and comprehend, together with his failure to do so, constitute[d] [an] intervening cause," which broke the "chain of causation leading from [the attorney] to [the client]").
 

 ¶ 61. The
 
 Berman
 
 court emphasized that its holding was not unlimited and did
 
 not
 
 immunize attorneys from liability for "negligent draftsmanship":
 

 [W]here the document requires substantive or procedural knowledge, is ambiguous, or is of uncertain application, the attorney may well be liable for negligence, notwithstanding the fact that his client read what was drafted. This holding is simply that when the document's meaning is plain, obvious, and requires no legal explanation, and the client is well educated, laboring under no disability, and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie.
 

 Id.
 

 at 806
 
 . Thus, while
 
 Berman
 
 held, as a matter of law, that the attorney's negligence was not the proximate cause
 
 in that case
 
 , in many other cases the issue will be one for the fact-finder to decide at trial.
 
 See
 

 Paul v. Smith, Gambrell & Russell
 
 ,
 
 283 Ga.App. 584
 
 ,
 
 642 S.E.2d 217
 
 , 223 (2007) (distinguishing
 
 Berman
 
 and holding that a "jury must decide" issues of causation related to the clients' "ability to read and comprehend the documents").
 
 [11]
 

 ¶ 62. For similar reasons, the chancellor in this case could have found that O'Brien's own failure to read the warranty deed was the sole proximate cause of any damages. O'Brien was not under any disability, and nothing prevented him from reading the deed. The deed plainly purported to convey the entire 8.9-acre tract. If O'Brien had read the deed, he would have seen that and could have had it corrected before he suffered any damage.
 

 ¶ 63. As the Georgia Court of Appeals held in
 
 Berman
 
 ,
 
 supra
 
 , a client's failure to read and understand a document will not always save the lawyer from liability for negligent drafting. If the legal import of an agreement's terms is not clear to a layperson, then the client's failure to read and understand may not be the proximate cause of his own damage. In some cases, this will be an issue for the trier of fact.
 
 See
 

 Paul
 
 ,
 
 642 S.E.2d at 223
 
 . On the facts of this case, the chancellor, as the trier of fact, could have found that O'Brien's failure to read was the proximate cause of his
 own damage. Therefore, the chancellor did not manifestly or clearly err in finding that O'Brien failed to meet his burden of proof, and this Court must affirm the chancellor's judgment. I respectfully dissent.
 

 GRIFFIS, P.J., AND TINDELL, J., JOIN THIS OPINION. BARNES, J., JOINS THIS OPINION IN PART.
 

 O'Brien testified that he intended to convey only a 2.3-acre lot, not the entire tract, but none of the other parties to the deed-O'Brien's ex-wife and Michael and Mary Ann Rogers-or the real estate agent, Willard, testified at trial.
 

 Accord
 

 Rice v. Poppe
 
 ,
 
 293 Neb. 467
 
 ,
 
 881 N.W.2d 162
 
 , 170-72 (2016) ("A line of cases decided by the Georgia Court of Appeals," starting with
 
 Berman
 
 , "illustrates when a client's failure to read or understand a document is the proximate cause of ... her injury.... As these cases show, whether a client's failure to read or understand the disputed document is a superseding cause depends on the facts.");
 
 Sutton v. Mytich
 
 ,
 
 197 Ill.App.3d 672
 
 ,
 
 144 Ill.Dec. 196
 
 ,
 
 555 N.E.2d 93
 
 , 98 (1990) (discussing
 
 Berman
 
 and subsequent cases and holding that "[w]hether the failure of a client to read a particular document necessarily defeats a malpractice action is dependent upon the particular circumstances");
 
 see also
 

 Simon v. Nadler, Nadler & Burdman Co.
 
 ,
 
 142 Fed.Appx. 894
 
 , 895-96 (6th Cir. 2005) ("[T]he proximate cause of Simon's damages was her own failure to read the antenuptial agreement before signing it .... [I]f Simon had read the agreement before signing, she would have discovered the offending provisions ....").