I,STEWART, J.
At issue in this appeal by Illinois National Insurance Company (“Illinois”) is whether the trial court erred both in finding coverage under a personal auto policy for Jennifer Boyer, who was listed as a “driver” on the declarations page of the policy, and in assessing damages for bad faith as provided under La. R.S. 22:1220. Finding that the trial court erred in both respects, we reverse the judgment as it pertains to Illinois.
FACTS
Illinois issued a personal auto policy to Robert Pennington, effective June 5, 1998. Pennington was the named insured on the policy, which he obtained through Hogan Agency, Inc., in West Monroe, Louisiana. On November 1, 1999, after purchasing a Kia Sephia for use by his fianceé, Jennifer Boyer, who was residing with Pennington and his parents, Pennington contacted the Hogan Agency to add the Kia and Boyer to his policy. Accordingly, the Kia was added to the policy as a covered vehicle, and Boyer was added as a driver. These changes were evidenced on the declarations page of the policy. In September 2000, Pennington sold the Kia and had it removed from his policy. Boyer remained on the policy as a driver.
On February 8, 2001, Boyer was involved in an automobile accident while driving a Mercury Grand Marquis owned by Malissa Pennington, Pennington’s sister-in-law. Larry and Kathryn Lemoine, the occupants of the automobile struck by Boyer, filed suit against Boyer, Illinois, and Allstate Insurance Company, Malissa Pennington’s insurer.
19,Although there were substantial damages, the Lemoines’ attorney attempted to settle their claims for the policy limits under both the Allstate and Illinois policies. Illinois refused to settle on the grounds that its policy did not provide coverage for Boyer as she was not an insured under the policy and was not driving a covered vehicle at the time of the accident. Boyer filed a third party demand against Illinois asserting that she was covered under the policy and seeking damages and penalties for Illinois’s breach of the duty of good faith and its refusal to settle the claim.
At trial, and over objections by Illinois, both Pennington and Boyer testified that they believed Boyer was insured under the policy. Pennington testified that he directed the Hogan Agency “to add the Kia car with full coverage and add Jennifer Boyer as the main driver of the Kia car.” He also advised the agent with whom he spoke that Boyer was his fiancé and that she lived with him. He accompanied Boyer to the Hogan Agency where he signed papers and she presented her driver’s license for a copy to be made. Boyer testified that she was present when Pennington called the Hogan Agency and that she believed she was insured as a result of the call. She testified that she saw the declarations page, saw her name on it, and thought she was insured.
Charles Hogan of the Hogan Agency also testified at trial on the issue of cover *307 age under the policy. He testified that Pennington’s policy was amended to add a vehicle and a driver, effective October 30, 1999. A new named insured was not added to the policy. Hogan testified there was nothing indicating a request to add Boyer as a named insured. Moreover, l.qBoyer would not have been listed as the named insured because she was not the owner of the Kia. Hogan explained that Boyer was insured for the two vehicles listed on the policy. Hogan further explained that all drivers in the household are listed in the policy so that the insurer will be aware of the potential drivers of the insured vehicle. Hogan admitted that the policy does not explain the significance of being listed as a driver.
After a bench trial, the trial court awarded damages to Larry and Kathryn Lemoine. The trial court found there to be coverage for Boyer under the Illinois policy and awarded the policy limits to the Lemoines. The trial court found Illinois to have been in bad faith and concluded that the matter could have been settled on Boyer’s behalf but for Illinois’s actions. Granting Boyer’s third party demand against Illinois, the trial court awarded Boyer $462,789.16 representing the uninsured portion of the damages awarded to the Lemoines and imposed a penalty of $5,000 with legal interest. In addition, the trial court assessed Illinois with legal fees totaling $3,945 plus legal interest and all costs of the proceedings. Illinois now appeals the trial court’s judgment.
DISCUSSION
Illinois argues that the trial court erred in finding coverage for Boyer under its policy and in allowing parol evidence on the meaning of the policy. Illinois contends that Boyer is not covered under any provision of the policy. She was neither the “named insured” under the policy, the spouse of the named insured at the time of the accident, nor a family member as that term is defined in the policy. In addition, she was not 14driving a covered vehicle when the accident occurred. Illinois asserts that being listed as a “driver” on the declarations page does not transform that person into a “named insured.”
In support of the trial court’s judgment, Boyer and the Lemoines contend that the policy fails to express the true intent of the parties regarding coverage for Boyer. They also contend that the policy is ambiguous in that it does not define what liability coverage is provided to a named driver. Because of this ambiguity, they assert par-ol evidence was admissible to determine the parties’ intent. They contend that the evidence shows Pennington added Boyer to his policy for purposes of obtaining coverage and that both of them believed she was covered. Moreover, Illinois knew she was his fiancé and that she was living with him. Boyer likens this to being a family member under the policy. Both Boyer and the Lemoines also contend that coverage is mandated under La. R.S. 32:900(C).
Our review of this matter is guided by the principles regarding the interpretation of insurance contracts. These bedrock principles were recently reiterated by the Louisiana Supreme Court in Cadwallader v. Allstate Insurance Company, 2002-1637 (La.6/27/03), 848 So.2d 577, 580:
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts as set forth in the Louisiana Civil Code.... The judiciary’s role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract....
Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have *308 acquired a technical meaning.... An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd | Bconclusion.... The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties’ intent....
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage.... Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer.... That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable....
If the policy wording at issue is clear and unambiguously expresses the parties’ intent, the insurance contract must be enforced as written.... Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy’s provisions are couched in unambiguous terms.... The determination of whether a contract is clear or ambiguous is a question of law.

0Citations omitted.)

In Doerr v. Mobil Oil Corp., 2000-0947 (La.12/19/2000), 774 So.2d 119, 124, opinion correction on rehearing, 2000-0947 (La.3/16/01), 782 So.2d 573, the supreme court noted that where a contract cannot be construed based on its language due to some ambiguity, then the court may look to extrinsic evidence to determine the parties’ intent. Any ambiguities in the policy are to be construed in favor of the insured to effect, not deny, coverage. Id. With these principles in mind, we must now determine whether the trial court erred in finding coverage for Boyer.

Liability Coverage Provided in Policy

Under “Part A-Liability Coverage,” Illinois agreed to “pay damages for ‘bodily injury’ or ‘property damage’ for which any ‘insured’ becomes legally responsible because of an auto accident.” The policy defines “insured,” in relevant part, as “you or any ‘family member’...,” or “(A)ny |fiperson using ‘your covered auto.’ “ The policy defines the terms “you” and “your” as referring to the “named insured” and the “spouse if a resident of the same household.” The policy also defines “family member” as “a person related to you by blood, marriage or adoption who is a resident of your household” and includes both ward and foster child in the definition.
We find these provisions to be clear and unambiguous. Under the explicit terms of the policy, Boyer was neither the named insured, the spouse of the named insured, nor a family member of the named insured. In addition, she was not driving a covered auto. We find no basis for coverage under the liability section of the policy as written. In the absence of a conflict with statutes or public policy, insurers have the same rights as individuals to limit their liability and enforce whatever conditions they impose upon their obligations. Cadwallader, 848 So.2d at 583; Marcus v. Hanover, 98-2040 (La.6/4/99), 740 So.2d 603, 606.
*309 We find no merit in the argument that Boyer should be considered a “family member” under the policy since Illinois knew that she was Pennington’s flaneé and that they lived together. This court previously considered and rejected a similar argument in Crigler v. Crigler, 28,085 (La.App.2d Cir.4/3/96), 671 So.2d 1199, writ denied, 96-1092, 96-1148 (La.6/7/96), 674 So.2d 968, wherein we refused to interpret “spouse” as used in an insurance contract to include one’s paramour or concubine. The Cadivallader court found the term “relative” used in an insurance contract to be unambiguous, to refer to those connected by blood or marriage, and thus to exclude foster children from coverage. In this instance, the policy clearly |7defines “family member.” The definition is unambiguous and not against public policy. It includes only those related by blood, marriage or adoption who reside in the same household, in addition to a ward or foster child. Boyer, who was not married to Pennington when the accident occurred, was not a family member as defined by the policy. Accordingly, we find no basis for coverage under the liability section of the policy.

Designation as Driver

Illinois disputes the argument of Boyer and the Lemoines that the policy is ambiguous because it does not define the term “driver” or explain its significance regarding coverage. Illinois argues that being listed as a “driver” is not a basis for finding coverage for Boyer, who was driving a non-covered vehicle when the accident occurred. We agree.
The declarations page of the policy designates Robert Brent Pennington as the named insured and lists four drivers — Pennington, Boyer, and Pennington’s parents, both of whom are designated as excluded drivers. Our review of the policy reveals the use of the term “driver” in one instance other than on the declarations page. Part F of the policy includes a section addressing termination which provides for cancellation of the policy by the insurer when the driver’s license of “any driver” who either lives with the named insured or who “customarily uses” the covered auto has been suspended or revoked. Nowhere in the policy is the term “driver” used to address coverage.
“Driver” is neither a term of art nor a technical term. Therefore, it is to be given its general popular meaning, namely, a person who drives a |svehicle. See Webster’s College Dictionary (Random House, 1991). This definition comports with the use of the term in the policy. As Charles Hogan’s testimony indicates, all drivers in a household are typically listed on the policy so that the insurer will be aware of potential drivers of the covered automobiles. No doubt this information allows the insurer to assess the risks associated with providing coverage. Although the policy does not include a “driver” as an “insured,” it does extend liability coverage to any person using a covered automobile. While Boyer was not an “insured” under the policy, she was insured while driving a covered vehicle. Unfortunately, she was not doing so when the accident occurred.
In addressing the distinction between a “named insured” and an “insured,” Couch On Insurance, 3d Ed., explains that “named insured” applies only to those specified as such by name in the policy, whereas to be an “insured” under an automobile policy, one must either be the named insured or the driver or occupant of a covered vehicle involved in an accident. Merely being listed in the policy in the status of a driver does not make one a “named insured.” Lee R. Russ and Thomas F. Segalla, 7 Couch On Insurance Ch. 110, § 110.1 (West Group, 3d Ed.1997). As previously discussed, Boyer is listed on *310 the declarations page as a driver. She is not the “named insured,” and she is not covered for purposes of this accident as an “insured” as defined by the policy. The policy does not extend blanket liability coverage to persons listed as drivers.
We find nothing in the policy regarding the scope of coverage or the listing of drivers to be ambiguous. The terms of coverage are clearly set 19forth. There being no ambiguity, it was error for the trial court to admit parol evidence to vary the terms of the policy. The purpose of the testimony by Pennington and Boyer was to show that the policy was to include coverage for Boyer and thus alter the terms of the policy. Even if we were to consider the testimony of Boyer and Pennington, our conclusion would not differ. Although Pennington testified that he believed Boyer would be covered like he was, he also testified that he directed his insurance agent “to add the Kia car with full coverage and add Jennifer Boyer as the main driver of the Kia car.” This is what was added to his policy. The Kia was fully insured, and Boyer was insured for purposes of driving the Kia.
We do not find this to be an instance wherein reformation of the contract is required because the contract fails to express the true intent of the parties as in Perry v. Law, 834 So.2d 523 (La.App. 1st Cir.1976), writ denied, 337 So.2d 527 (La.1976) and 337 So.2d 529 (La.1976), and Collins v. State Farm Mut. Auto. Ins. Co., 188 So.2d 460 (La.App. 3d Cir.1966), two cases cited by the Lemoines. Both of these cases involved the issuance of a new policy to insure an automobile. In both cases, the insurer failed to designate the proper party as the named insured.[1] In this instance, neither Pennington nor Boyer sought a separate policy to insure the Kia or to designate Boyer as the named insured of such policy. The facts show that Pennington only sought to add the Kia to his own policy and to add Boyer as a driver of that vehicle. Boyer was insured for purposes of driving the [inKia or any other covered automobile. This comports with Pennington’s requested additions to his policy of insurance.

Omnibus Coverage Under La. R.S. 32:900(C)

Boyer and the Lemoines also rely on La. R.S. 32:900(C) as a basis for finding coverage. They argue that Boyer was added to the policy as an operator and that this provision mandates liability coverage for operators. Illinois contends that this provision does not apply and relies on Simms v. Butler, 97-0416 (La.12/2/97), 702 So.2d 686 as supporting authority.
La. R.S. 32:900(C) provides as follows:
C. Such operator’s policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner’s policy of liability insurance.
This provision is part of the Louisiana Motor Vehicle Safety Responsibility Law, La. R.S. 32:851, et seq., which provides a mandatory, comprehensive scheme for protecting the public from damage caused by *311 motor vehicles. Simms, 702 So.2d at 687. Under La. R.S. 32:861(A)(1), every self-propelled motor vehicle registered in Louisiana is required to be covered by some form of security, one form of which is an automobile liability policy with liability limits as set forth in La. R.S. 32:900(B)(2), the statutory omnibus clause. Id. In footnotes, the Simms court distinguished an “automobile liability policy” from a “motor vehicle liability policy.” The court noted that, aside from the statutory omnibus clause incorporated by law into all automobile liability policies, the provisions of La. R.S. 32:900 apply only to “motor vehicle Lability policies.” A motor vehicle liability Impolicy is defined as “an owner’s or an operator’s policy of liability insurance, certified ... as proof of financial responsibility.... ” La. R.S. 32:900(A). Because the policy at issue in Simms was an “automobile liability policy,” and not a “motor vehicle liability policy” as defined by La. R.S. 32:900(A), the court found no merit to the argument that La. R.S. 32:900(0) was statutorily incorporated into the policy.
There is no indication that the policy at issue here is anything other than an automobile liability policy as in Simms. As such, La. R.S. 32:900(C) is not statutorily incorporated into the policy and does not mandate coverage for Boyer.

Bad Faith Damages

An insurer owes his insured a duty of good faith and fair dealing. La. R.S. 22:1220(A). This includes an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims. Id. Breach of this duty subjects the insurer to Lability for damages. Id. An insurer may also be penahzed when it arbitrarily, capriciously, and without probable cause refuses to timely settle or pay a claim. La. R.S. 22:658(B)(1).
Part A of the policy pertaining to liability coverage provides that Illinois has “no duty to defend any suit or settle any claim ... not covered under this policy.” Illinois denied coverage in this matter, and its denial was well-founded. Nothing in the policy extends coverage to Boyer, who was not an “insured” under the terms of the policy and who was involved in an accident while driving a non-covered vehicle. Illinois did not act in bad faith in denying coverage and was neither arbitrary, capricious, nor without | ^probable cause in refusing to settle. Having found there to be no coverage for Boyer under the policy for this accident, we find that it was error for the trial court to assess damages, penalties, attorney fees, and costs against Illinois.
CONCLUSION
For the reasons mentioned, we reverse the trial court’s judgment as it pertains to a finding of coverage under Illinois’s policy and awards the policy limits to the plaintiffs, Larry and Kathryn Lemoine. We also reverse that part of the judgment granting Boyer’s third party demand and awarding damages, penalties, costs, and attorney fees. Costs are assessed equally between the Lemoines and Boyer.
REVERSED.

. In Collins, supra, the ultimate issue of whether the insurance contract would be reformed was not decided. Rather, the summary judgment was reversed, and the matter was remanded to determine whether the parties to the contract intended to provide protection for the party designated as named insured on the policy or the actual driver of the vehicle.