# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01573-COA

**ROBERT H. JOHNSTON III, INDIVIDUALLY AND AS FATHER AND GUARDIAN OF THE PERSON AND ESTATE OF EMMA KATE JOHNSTON, A MINOR, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JENNIFER NICOLE STEPHENS, DECEASED**                                    APPELLANT

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY AND JASON ALLEN WHITE**                                    APPELLEES

DATE OF JUDGMENT:                10/05/2018
TRIAL JUDGE:                     HON. CELESTE EMBREY WILSON
COURT FROM WHICH APPEALED:       DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          WILLIAM ALBERT BROWN
ATTORNEYS FOR APPELLEES:         EDWARD J. CURRIE JR.
                                 WILLIAM H. CREEL JR.
                                 JOSEPH WALTER GILL
NATURE OF THE CASE:              CIVIL - TORTS-OTHER THAN PERSONAL
                                 INJURY AND PROPERTY DAMAGE
DISPOSITION:                     AFFIRMED - 02/18/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., McCARTY AND C. WILSON, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    Robert Johnston III, individually and as guardian of his daughter, Emma Johnston, and on behalf of the wrongful-death beneficiaries of Jennifer Stephens, Johnston's fiancée, filed suit against Nationwide Property and Casualty Insurance Company (Nationwide), and

Nationwide's insurance agent Jason White in the DeSoto County Circuit Court.[1] The complaint alleged that Nationwide wrongfully denied his uninsured-motorist (UM) claim under his Nationwide automobile policy (Policy) and that White was "negligent for failing to adequately advise [him] as to the coverage needed to protect all members of his household from uninsured/underinsured motorists and/or failing to advise [Johnston] to add [Stephens] to his policy as a named insured." Nationwide and White filed separate motions for summary judgment, which the circuit court granted. On appeal, we find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. On September 18, 2011, Stephens was killed by a teenage driver while out walking. According to Johnston, "[n]ot long before" the accident, Johnston and Stephens had gone to White's office to request that Stephens's vehicle be added to Johnston's auto policy. They met with Jody Woody, White's employee.[2] According to Johnston, when Stephens told Woody that Stephens's father had already dropped her vehicle from his auto policy, Woody advised Stephens to add her vehicle "back to her father's policy before adding her vehicle to Johnston's policy." No changes were made to Johnston's Policy.

¶3. Johnston, individually and as his daughter's guardian and administrator of Stephens's estate, filed a claim for UM benefits under his Policy. Under the Policy's UM terms,

---

[1] As Emma was Johnston and Stephens's minor child, Johnston brought suit in both individual and representative capacities. The complaint incorrectly named "Nationwide Mutual Insurance Company" as the defendant, rather than the party's proper name, Nationwide Property and Casualty Insurance Company ("Nationwide").

[2] Johnston had dealt with Woody in the past, and he said that "she appeared to be knowledgeable of automobile insurance and [he] came to rely upon Ms. Woody as well as Mr. White."

2

compensatory damages would be paid for bodily injury suffered by Johnston "or a relative." The term "relative" was defined in the Policy as "one who regularly lives in your household and who is related to you by blood, marriage or adoption." Nationwide denied the claim because Johnston was the sole named insured under the Policy, and Stephens was not Johnston's "relative" under the terms of the Policy. Johnston filed "a complaint for wrongful death, negligence, uninsured motorist coverage, bad faith, etc." against Nationwide and White on September 17, 2014, in the circuit court.[3] Upon leave of the court, Johnston filed an amended complaint on November 29, 2017.

¶4.     On December 11, 2017, both Nationwide and White filed motions to dismiss or for summary judgment. A motions hearing was held on June 21, 2018. Nationwide argued that (1) Johnston lacked standing to sue in an individual capacity because he was not a wrongful-death beneficiary; (2) Stephens did not have UM coverage under the Policy because she was not Johnston's relative under the Policy's terms; and (3) Johnston did not have a valid claim of negligence against Nationwide and White. White's motion argued that he had no duty with regard to the insurance claims and was not liable for any alleged breach of the Policy's terms. White requested that he be dismissed from the action because Johnston failed to state a viable cause of action for negligence against him.

¶5.     The circuit court granted Nationwide's and White's motions for summary judgment.

---

[3] Although not relevant to this appeal, Nationwide removed the case to federal court on February 5, 2015, on grounds that White was improperly joined. The district court remanded the case to circuit court on September 20, 2015. A circuit clerk's motion to dismiss for lack of prosecution was filed on November 17, 2016. Johnston responded to the clerk's motion, and he filed a motion for leave to file an amended complaint, which was granted.

The court determined that Johnston lacked standing to bring suit in an individual capacity because the action concerned duties owed to Stephens or her estate, not Johnston individually. The court further held that with regard to the bad-faith claim, the Policy's language was unambiguous, and Stephens was not entitled to UM benefits because she was not an insured or a relative under the terms of the Policy. Lastly, the court concluded that Johnston had failed to present any evidence or authority that White was negligent.[4] The court entered a final judgment of dismissal with prejudice on October 5, 2018. Aggrieved, Johnston appeals the circuit court's findings.

## DISCUSSION

**I.      Whether Johnston had standing to assert his individual claims alleged in the complaint.**

¶6.      The circuit court held that Johnston lacked standing in an individual capacity to bring the action because the "suit d[id] not involve the breach of duties owing to Johnston as an insured" and because "the claims in this action concern alleged breaches of duty owed to Stephens and seek to redress a wrong allegedly done solely to Stephens." (Emphasis omitted). Because Johnston was not married to Stephens, the court determined that she was not an insured under the policy[5] and that Johnston was not one of her wrongful-death beneficiaries. Johnston argues on appeal that the circuit court erred in ruling that he lacked standing in an individual capacity.

----

[4] The circuit court also ruled that the amended complaint related back to the original complaint; so Johnston's claims were not barred by the applicable statute of limitations. *See* M.R.C.P. Rule 15(c). This ruling has not been challenged on appeal.

[5] This matter will be discussed in more detail in part II.

4

¶7. Mississippi's liberal standing requirements provide that "parties have standing to sue 'when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.'" *Hall v. City of Ridgeland*, 37 So. 3d 25, 33 (¶24) (Miss. 2010) (footnote omitted) (quoting *Burgess v. City of Gulfport*, 814 So. 2d 149, 152-53 (¶13) (Miss. 2002)). "Further, for a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public." *Id*. at 33-34 (¶24) (citing *Burgess*, 814 So. 2d at 153).

¶8. The amended complaint alleged that Nationwide refused to pay the UM claim on behalf of Johnston or Stephens's wrongful-death beneficiaries and that "Nationwide's denial of coverage was made in bad faith, because its policy fails to define 'related to you by blood,' or to state how closely persons must be related in order to receive coverage, yet it denied such coverage." (Emphasis omitted). Johnston contends that he has "standing to sue for bad faith" in an individual capacity. He is correct in one respect. "Every insurance case of bad faith involves the dealings between an insurance company and its insured." *Miss. Farm Bureau Mut. Ins. Co. v. Todd*, 492 So. 2d 919, 944 (Miss. 1986). Thus, as the named insured, Johnston had a "colorable interest" to assert a claim for bad faith against Nationwide. However, as Nationwide and White note, the bad-faith claim "arises from the denial of [UM] coverage for Stephens's beneficiaries." Because Johnston is not a beneficiary of Stephens, he suffered no "adverse effect" from Nationwide's alleged bad-faith denial of UM coverage. Therefore, he did not have standing in an individual capacity to assert the claim for a bad-

5

faith denial of coverage.

¶9.     With regard to the negligence claim, Johnston further argues that the court erred in finding that he did not have standing because "it was to Johnston *himself* that [White] gave negligent advice."  It was alleged in the amended complaint that White was negligent in failing to advise him about UM coverage.  The complaint further asserted that Johnston and Stephens "relied upon the advice of Woody as agent for White and Nationwide" and that it was their understanding that Stephens and their daughter "would receive all the benefits of [Johnston's] policy as a member of his household."  Again, as Nationwide and White argue, any "damages for such alleged negligent advice [by White] are not Johnston's individual damages."  Stephens and her wrongful-death beneficiaries would be the ones to experience an "adverse effect" from the bad-faith and negligence claims alleged in the complaint, not Johnston.  We find no error in the circuit court's determination that Johnston lacked standing in an individual capacity.

**II.     Whether the circuit court erred in granting summary judgment.**

¶10.    On appeal, we review a circuit court's grant of summary judgment de novo.  *Howell v. USAA Cas. Ins. Co.*, 122 So. 3d 800, 803 (¶6) (Miss. Ct. App. 2013).  Summary judgment shall be granted by a court "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).  The movant "has the burden of demonstrating that there is no genuine issue of material fact in existence [and] the nonmoving party 'should be given the benefit of every

reasonable doubt.'" *Howell*, 122 So. 3d at 803 (¶7) (quoting *Tucker v. Hinds Cty.*, 558 So. 2d 869, 872 (Miss. 1990)).  However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial.'"  *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶10) (Miss. 2013) (quoting M.R.C.P. 56(e)).

## A.    Bad-faith Claim

¶11.    "To recover UM benefits provided by an insurance policy, a claimant must first prove that he or she is an 'insured' under either the insurance policy and/or the UM statute." *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 871 (Miss. 1995).  With respect to UM coverage, the Policy provided, "We will pay compensatory damages, including derivative claims because of bodily injury suffered by you or a relative, and which are due by law to you or a relative from the owner or drive of an uninsured motor vehicle . . . ."  The term "relative" is defined in the Policy as "one who regularly lives in your household *and* who is related to you *by blood, marriage or adoption* (including a ward or foster child).  A relative may live temporarily outside your household." (Emphasis added).

¶12.    Johnston cites Mississippi Code Annotated section 83-11-103(b) (Rev. 2011) to support his claim that Nationwide's policy language was ambiguous and more restrictive than the statutory definition of an insured for purposes of UM coverage.  The statute provides:

> (b) The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to

7

which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.

Because the Mississippi UM Act does not define "relative," Johnston contends that Nationwide's definition improperly limits "relative" to those related by blood or marriage. He claims that a fiancée, although not related by blood, marriage, or adoption, should qualify as a relative under the UM statutes. However, he provides no authority for this claim.

¶13.    The term "relative" is defined as "[a] person connected with another by blood or affinity[.]" Black's Law Dictionary 1480 (10th ed. 2014). "[A]ffinity" is further defined as "[t]he relation one spouse has to blood relative of the other spouse; relationship by marriage." *Id*. at 70. While we find no case on point in Mississippi, the Louisiana Second Circuit Court of Appeal has considered similar policy language. In *Lemoine v. Illinois National Insurance Co.*, 868 So. 2d 304, 306 (La. Ct. App. 2004), Robert Pennington's fiancée, Jennifer Boyer, was involved in an automobile accident while driving a car. She was not a named insured under Pennington's insurance policy with Illinois, but she was listed as a driver. *Id*. The Lemoines, the occupants of the vehicle struck by Boyer, attempted to settle their claims for the policy's limits. *Id*. The insurance policy defined "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household . . . ." *Id*. at 308. The appellate court concluded:

> We find no merit in the argument that Boyer should be considered a "family member" under the policy since Illinois knew that she was Pennington's fiancee and that they lived together. . . . In this instance, the policy clearly defines "family member." The definition is unambiguous and not against public policy. It includes only those related by blood, marriage or adoption

8

who reside in the same household, in addition to a ward or foster child. Boyer, who was not married to Pennington when the accident occurred, was not a family member as defined by the policy. Accordingly, we find no basis for coverage under the liability section of the policy.

*Id*. at 309; *see also Slokus v. Utica First Ins. Co.*, No. UWYCV085011071S, 2011 WL 3427201, at *7 (Conn. Super. Ct. July 14, 2011) (holding that fiancé of named insured did not qualify as a "relative" under the insurance policy); *State Farm Mut. Ins. Co. v. Pizzi*, 505 A.2d 160, 161-62 (N.J. Super. Ct. App. Div. 1986) (finding that an adult cohabitant was not a "spouse" or "relative" under the terms of the defendant's UM coverage).

¶14.    Acknowledging he and Stephens were never married, Johnston has propounded a unique argument—both before the circuit court and on appeal—to support his claim that he and Stephens were related by blood. He contends that as "[g]eneticists have determined that all persons of European descent are related, and . . . all persons with blue eyes come from a common ancestor," he and Stephens were related because they "both had blue eyes and European ancestors." Noting Johnston's failure to cite any authority to support his argument, the circuit court declined to extend the definition of blood relative "to an infinite degree."

¶15.    Johnston has also cited no legal authority to support this argument on appeal. The "[f]ailure to cite legal authority in support of an issue is a procedural bar on appeal." *Bacallao v. Madison Cty.*, 269 So. 3d 139, 147 (¶31) (Miss. Ct. App. 2018) (quoting *Mabus v. Mueller Indus. Inc.*, 205 So. 3d 677, 686 (¶48) (Miss. Ct. App. 2016)). Notwithstanding, we agree with the circuit court that the term "relative" cannot be extended "to an infinite degree." In *Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 227 (Wis. 2002), the Wisconsin Supreme Court considered whether a policyholder's third cousin would be

9

considered a "relative" under the terms of her policy with American Family Mutual Insurance. Although the *Frost* court found the term "relative" in the policy to be ambiguous, it nevertheless concluded that the term did not extend to a distant relative living with the policyholder:

> Justice Ann Walsh Bradley asked at oral argument: How far does the policy require us to trace our ancestors to determine who our relatives are? If we accept Adam and Eve, she continued, aren't we all relatives under American Family's definition?
>
> . . . .
>
> A reasonable policyholder would not understand the word "relative" in this policy exclusion to include any person related by blood no matter how remote the relationship. If "relative" embodies all persons having a blood relationship to the insured, the effect is to enlarge the exclusion in this policy to extend to persons only barely and remotely touching the policyholder. . . . We conclude that a reasonable person in the position of Doreen Whitbeck would not understand the word "relative" to include persons separated by eight degrees of kinship.

*Id*. at 233-34; *see also Allstate v. Walton*, No. 1:03-CV-00188-JDT-WTL, 2004 WL 2137627, at *6 (S.D. Ind. Aug. 10, 2004) (holding that "even the most charitably and reasonably broad construction of the word 'relative'" in an insurance policy would not extend to persons related by ninety-five degrees of kinship) (citing *Frost*, 654 N.W. 2d at 233-34).

¶16.  "[T]o prevail in a bad[-]faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (¶9) (Miss. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (Miss. 1998)). As

Johnston failed to provide evidence that Stephens was covered under the Policy's terms, we find no error in the circuit court's conclusion that Nationwide properly denied the claim because Stephens was not Johnston's "relative" for the purposes of UM coverage.

### B. Negligence

¶17. We also agree with the circuit court that "Johnston has not presented any evidence that he was told Stephens would be covered under his [P]olicy." In *Mladineo v. Schmidt*, 52 So. 3d 1154, 1162 (¶28) (Miss. 2010), the plaintiffs alleged that their insurance agent made an affirmative misrepresentation to them—that their property was not in a flood plain and that their policy "would cover all wind and water damage"—which resulted in their decision not to purchase a separate flood-insurance policy. The Mississippi Supreme Court determined that although insurance agents lack "an affirmative duty to advise buyers regarding their coverage needs," when they "do offer advice to insureds, they have a reasonable duty to exercise care in doing so." *Id*. at 1163 (¶32). The *Mladineo* court further concluded that whether the insurance agent exercised reasonable care in providing advice should be determined by a jury and reversed the trial court's grant of summary judgment on this issue. *Id*. at (¶¶32-33). The supreme court held:

> It is a question of fact whether [the agent] breached this duty by allegedly informing the Mladineos that their property was not in a flood plain and counseling against flood insurance. Further, it is a question of fact whether any such breach proximately caused any damages to the Mladineos, such as uninsured claims resulting from a lack of flood coverage.

*Id*. at 1162 (¶29). Unlike *Mladineo*, Johnston has not alleged that Woody or her employer, White, affirmatively misrepresented any information regarding his Policy or the coverage it

provided. The only advice Woody gave Johnston was to reinstate Stephens on her father's insurance—advice that Johnston and Stephens did not follow. Johnston never alleged that this was bad advice or that it was negligently given.

¶18. Johnston claims that Woody was negligent because she "explained nothing" about UM coverage, and he "had only a vague understanding of how [UM] coverage worked and had no idea [Stephens] might not be covered on [his P]olicy." As stated, an insurance agent does not have an affirmative duty to advise an insured of his coverage needs. Moreover, the supreme court "has held as a matter of law that an insured is charged with the knowledge of the terms of the policy upon which he or she relies for protection." *Mladineo*, 52 So. 3d at 1161 (¶26). In *Bell v. Certain Underwriters at Lloyd's London*, 200 So. 3d 447, 452-53 (¶19) (Miss. Ct. App. 2016), we affirmed a circuit court's finding that plaintiffs' "claims for negligence and fraud were precluded by their failure to read the policy," and concluded:

> Here, . . . the Bells could have ascertained that the policy did not cover the barn by simply reading their policy. Accordingly, the Bells are imputed with knowledge that Emma's policy did not cover the barn. It follows that their negligence claim fails as a matter of law because the proximate cause of their damage was their own failure to execute their duty to read the policy, not Montgomery's alleged negligence in procuring it. Likewise, any claim for fraudulent or negligent misrepresentation fails as a matter of law because the Bells could not have reasonably relied on an assurance of coverage that directly contradicted the plain language of the policy they had in their possession.

(Citations and internal quotation marks omitted). Johnston admitted that he had his policy for "several years going back to the time when Mr. Fesmire ran the agency before Mr. White," and the Policy clearly indicated that only a relative by "blood, marriage or adoption" who resided with Johnston was covered.

12

¶19. Accordingly, we find no error in the court's grant of summary judgment and dismissal of the claims alleged in Johnston's complaint.

¶20. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**